## No. 34,105

Eugene N. Fodor, *Appellee*, v. The Interstate Transit Lines and The Travelers Mutual Casualty Company et al., *Appellants*.

(86 P. 2d 574)

Opinion filed January 28, 1939.

T. M. Lillard, O. B. Eidson, P. H. Lewis, all of Topeka, Ralph Knittle, C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton and R. E. Haggart, all of Salina, for the appellants.

William S. Norris, Wint Smith, Homer B. Jenkins, all of Salina, and G. Dexter Blount, of Denver, Colo., for the appellee.

The opinion of the court was delivered by ·

SMITH, J.: This was an action for damages alleged to have been sustained when the mother of plaintiff was killed in a collision between a passenger bus in which she was riding and an oil truck. Judgment was for plaintiff. Defendants appeal.

The action was brought against one defendant, which is engaged in operating a line of passenger buses through the state, and two other defendants, that is, the driver and owner on an oil-tank truck, and the insurance company which carried the liability insurance on the truck. The truck was being driven east on highway 40 and the bus was being driven west. This made the south half of the highway the proper place for the truck and the north half the proper place for the bus. The highway was of cement and twenty feet wide.

The petition first alleged the residence of the plaintiff; that the defendant bus company was a corporation licensed to operate a line of buses as a common carrier; that the defendant, Evan Smith, was the owner of a gasoline transport truck licensed to operate as motor carrier for the transportation of gasoline on the highways of Kansas, and was driving the truck when the collision occurred, and the defendant insurance company had issued a policy to Smith covering the truck in question; that plaintiff was twenty-two years old and was the son and only heir of Matilda Fodor, deceased; that on October 30, 1935, between the hours of 6:30 and 7:30 Matilda was a passenger on a bus operated by defendant bus company, which bus was being driven between Salina, Kan., and Denver, Colo.; that while the bus was about five miles west of Salina, as a

result of the concurrent acts of negligence of the driver of the bus and Evan Smith, Matilda was killed; that Evan Smith operated the truck in a negligent manner by not keeping a proper lookout for other cars; operated his truck on the left or north side of the highway while the north side of the highway was occupied by the bus at a time when the bus was approaching the truck from the opposite direction; that Smith failed to turn to the right when he saw the bus in such a position on the highway that a collision would result unless he did stop or turn aside; that he drove the truck at a dangerous rate of speed; that he drove the truck at a time when he was physically exhausted as a result of lack of rest so that he went to sleep; that he drove the truck while it was in an unsafe condition, due to its being in bad mechanical repair. The petition then alleged that the bus company, through its agent, the driver, was negligent in that he failed to honk his horn when he saw the truck on the wrong side of the road; that he drove the bus at a dangerous rate of speed; that he failed to keep a proper lookout and failed to have the bus under proper control; that he was operating the bus so that the left side of it extended in a southerly direction across the center line or so near the center line of the pavement that the bus was in a dangerous position with reference to the truck; that he failed to apply the brakes of the bus when he saw the truck approaching and failed to stop, slow down or turn the bus off the road in time to avoid a collision with the truck. The petition then alleged that Matilda for many years prior to her death had been employed as a highly skilled domestic servant at a monthly wage of $80 in addition to her ordinary living expenses; that she had for a number of years been contributing $70 a month to the support of plaintiff while he was a student in medical school and that plaintiff could have reasonably anticipated that she would continue to so contribute for at least eight years; that by reason of her death plaintiff was damaged in the amount of at least $6,720; that the funeral expenses added to this made $7,120, which was the amount for which judgment was asked. A copy of the insurance policy was attached to the petition.

The answer of the bus company admitted the formal allegations of the petition, but denied the collision was occasioned by negligence of the bus driver, and alleged that it was caused by the negligence of Smith, the owner of the truck, also the driver. Smith and the insurance company filed a joint answer. This answer ad-

mitted the formal allegations of the petition and alleged further that the liability of the insurance company was limited to $5,000 for the death of one person; that if Matilda Fodor was killed in a collision between the bus and truck it was caused by the negligence of the bus company and Smith was not guilty of any negligence. The answer further alleged that at the time of the collision Smith was operating his truck in a lawful manner on the right side of the highway, but that the bus driver was driving the bus at a dangerous rate of speed upon the left side of the road without looking ahead and without having the bus under control, and that the bus driver failed to turn to the right.

There was some dispute at the day of the trial about whether the defendants should be forced to trial that day. That point will be treated later in this opinion.

We shall consider first the appeal on the part of the bus company. The first point argued by it is that its demurrer to the evidence of plaintiff should have been sustained. On this point the bus company urges that the evidence of plaintiff showed that the bus was on its own side of the road at the time of the collision; that Smith drove his truck on the wrong side of the road and that the driver of the truck was asleep. If the evidence showed these things then the bus company would be correct, and its demurrer should have been sustained. If the jury had found such to be the case there is ample evidence in the record to sustain such a finding. However, in considering a demurrer to the evidence any inference favorable to the plaintiff must be drawn and matters testified to by witnesses are taken as true. (See *Nelson v. Peterson,* 147 Kan. 507, 78 P. 2d 20, and many other Kansas cases.) With this rule in view it must be noted that the plaintiff is seeking to hold two joint tortfeasors. The real dispute is between the bus company on one side and the truck man and his insurance carrier on the other. Each one claims that he was on the right-hand side of the road. If they were both right there would have been no collision.

Plaintiff put both the driver of the bus and the driver of the truck on the stand. There were other witnesses, but a consideration of the testimony of these two will be sufficient to dispose of the question we are considering.

Smith testified that he saw the bus coming when it was a thousand feet away; that when he first saw the bus it was crowding the black line in the center of the road; that it stayed about on the center

line all the time it was in front of him; that at the time of the collision his front end had cleared the front end of the bus and the bus seemed to swerve toward the truck. On cross-examination he testified that the bus did not change positions with reference to the center of the road as the two vehicles approached each other and that the front end of the bus struck the front end of the trailer part of the truck.

The bus driver testified that he first saw the approaching truck a quarter of a mile away; that he was on the south side of the road; that when the truck was two hundred or two hundred and fifty feet away it started coming over to the bus driver's side of the road; that it never did get back on the proper side of the road. On cross-examination he testified that the collision happened on his side of the road; that at the time of the collision the truck came four feet over on his side of the road and the front wheels of the bus were off the pavement and on the shoulder at the time of the collision. When the defendants were seeking to establish their defense one of their witnesses testified that the bus driver said to the truck driver: "What was the matter with you? You were asleep," and the truck driver said, "I don't know."

On behalf of the defendant Smith he testified that he did not tell the bus driver or anybody else that he was asleep or that he may have been asleep; that he had been on the road all night, but had rested twice during the night. The testimony of these witnesses offered on behalf of the defendants should not be considered on the question of whether a demurrer to the evidence of the plaintiff should have been sustained. It is true that one of these witnesses testified one way and the other testified to the opposite effect. There was sufficient evidence, however, to make the question of what took place one to be submitted to the jury. It should be noted that the plaintiff only charged in his petition that the bus was operated so that it extended across the center line, or so near it as to be in a dangerous position. The truck driver testified that the bus driver was hugging the center line and later the front end of the vehicle seemed to swerve toward the truck. It would not take much of a swerve where the wheels of the bus were on or just about on the black line and the wheels of the truck were in about the same position to cause the collision that occurred here. The bus company owed the deceased, who was a passenger for hire, the highest degree of care. It cannot say that it could drive the bus right up to the

center line of the highway, where a very slight change in direction would cause it to collide with a vehicle being driven right up to the other side of the center line, and escape liability for a collision no matter on which side of the line the collision actually occurred. The black line is not put there so that vehicles can see how close they can come to it and not collide with other traffic. There was four feet of highway to the right of the bus. Ordinary care demanded that both the bus and truck be driven clear over to the edge of the pavement if necessary. Indeed, the bus driver says he did this. Whether he did or not was a question for the jury. As to the question of whether the truck driver was asleep, the petition alleged that he was asleep. The bus company pleaded that he was asleep, but he denied this in his answer and on the witness stand. The whole question was for the jury. Certainly this court cannot reach a different conclusion on appeal.

The bus company next argues that the acts of negligence found against the bus driver, which were supported by any competent evidence, were not the proximate cause of the collision. These acts of negligence were found in the answer to question 7. Questions 6 and 7 were answered as follows:

"6. At the time of and immediately prior to the accident, did the bus driver handle his bus in such a manner as an experienced, careful, prudent person would have done under like circumstances? A. No.

"7. If you answer the preceding question in the negative, state fully wherein he failed to do so. A. The said bus driver, Mr. Lorenzen, was driving on the center line, or south of the center line of said highway U. S. 40. He failed to pull said bus over to the right in time to avoid said collision with said transport truck. He was also driving said bus at a high rate of speed, in excess of 45 miles per hour. He also failed to properly apply his brakes or sound his horn, or give any signal of any kind, on said bus, prior to said collision."

For the purposes of this opinion we need only consider the portion of this answer wherein the jury found that the bus driver was driving on the center line, or south of it. Here what has been said on the question of whether the demurrer should have been sustained is in point. We cannot say that the driving of the bus right up to the middle line was not the proximate cause, or one of the proximate causes, of the collision. The bus company argues that this finding is not supported by any competent evidence, because the petition alleged that the truck driver was asleep. The bus company admitted this in its answer and the jury found that he was in an

exhausted condition and hence the evidence of the truck driver was not entitled to any weight. The trouble with that argument is that the finding of the jury was not that the truck driver was asleep, but that he was exhausted. The argument goes to the weight of the evidence, not its competency, and was for the jury. The bus company next argues that the court committed error in requiring it to go to trial when the case had not been at issue for ten days, as required by statute. It will be noted that the bus company and the truck owner were charged with being joint tort-feasors. When the petition was filed the answer of the bus company was filed within time or before October 27, 1937. There was some time before service could be had on the insurance company, so the answer of the other two defendants was delayed. On the first day of the December term the case was at issue as to the plaintiff and the bus company. On that day the attorney for Smith and the insurance company agreed to file their answer, and the case was set for trial. One of the counsel for the bus company was in court at the time. A list of cases set for trial on January 5, 1938, was posted in the courtroom. Two of the counsel for the bus company were in the courtroom at different times while the notice was posted. The answer of the truck owner and the insurance company was filed less than ten days before the case went to trial. The only thing pleaded in the answer of the truck owner that was not pleaded in the answer of the bus company was an allegation that the liability of the insurance company was limited to $5,000 for the death of any one person. It cannot be said that this brought in new matter, since a copy of the insurance policy was attached to the petition and the bus company knew of its provisions at all times. The bus company was not prejudiced by being forced to try the case when the answer of the truck owner and the insurance company had not been on file for ten days.

The bus company next argues that certain members of the jury were guilty of misconduct in not advising the trial court of their knowledge as to a compromise settlement of another case growing out of the same collision. The bus company argues that the court committed error in requiring all defendants to go to trial before a jury which was informed as to the compromise of the former case. The collision, out of which this case grew, also caused the death of a little boy and injured his mother. She filed suit against these defendants for her own injuries and she and her husband also filed

suit for damages for the death of the little boy. Her husband filed suit for the loss of services. All these causes of action were consolidated for trial. It was known as the Fibiger case. It was called for trial when the December term of court started. When it was called the entire panel of jurors were in the courtroom. When a jury had been selected the remaining members of the panel were excused and they were admonished to stay out of the courtroom during the trial of the Fibiger case. After the trial had lasted two days and all the evidence was in, the parties reached a compromise settlement, but which did not cover all of the cases. During the interim between the trial of the Fibiger case and the trial of this case another case was tried and the entire panel of jurors was together again. The details of the settlement of the Fibiger case were published in a local paper. All the defendants made formal motions for continuance when the jury was called to the box, on the ground that the members of the panel who had not heard the evidence in the Fibiger case would by their close association with the other jury members have knowledge of the settlement of the Fibiger case. The trial court stated that it would not pass on the matter of continuance at that time, but if it developed to the satisfaction of the court that there was prejudice on the part of the jury they would be discharged, but until that had developed the panel would not be dismissed. This was clearly the correct action for the court to take. The mere fact that there were circumstances under which members of the panel might have learned something prejudicial to the defendants did not warrant the trial court in assuming that the members of the panel had been prejudiced. There is no showing here that the trial court restricted the defendants in the scope of their inquiry as to prejudice on the part of the jurors. The question of whether a juror is biased or prejudiced is one of fact to be found by the trial court. Once the trial court has made a finding on the matter and there is some evidence to sustain it the finding will not be disturbed on appeal. (See *State v. Stewart*, 85 Kan. 404, 116 Pac. 489; also, *State v. Smith*, 74 Kan. 387, 89 Pac. 21.)

Misconduct of the jury was one of the grounds urged by all parties on their motion for a new trial. On the hearing of this motion every member of the jury but one was called to the stand. The trial court made findings in the journal entry to the effect that none of the jurors knew of the outcome of the Fibiger case except one,

who was in the courtroom when the jury in the case was dismissed. This finding will not be reviewed by this court on appeal.

The bus company requested the trial court to instruct the jury on the proper action one should take when confronted with a sudden emergency. The court refused to give such an instruction and this is urged as error. The situation was not one that justified such an instruction. According to the testimony of the driver of the bus he got clear over to the right so that he had one wheel on the shoulder. According to the testimony of the truck driver the bus driver came right on down the road with his left wheels on the middle line. The jury apparently believed the story of the truck driver. The defendants were not prejudiced by failure to give this instruction.

Defendants next argue that misconduct of counsel for plaintiff prejudically affected their rights. This argument has to do with the argument of counsel for the plaintiff with reference to the testimony of the claim agent for the bus company. On the day of the collision this claim agent was in Denver and the body of deceased was shipped to Denver. The plaintiff came to the bus station first to inqure when the bus would be in, and later with a telegram stating that a woman believed to be his mother had been killed. This last time he was sent to the office of the claim agent some distance from the bus station. At that time the agent took statements from plaintiff and plaintiff's aunt, the sister of deceased, to the effect that plaintiff was not receiving any help from his mother; that he was working his way through school and his mother was a domestic servant in a home. The plaintiff had testified that his mother had been sending him $80 a month to pay his way through medical school and he expected to be in school for eight years. The statements referred to, and one by his aunt to the same general effect, were introduced as a part of their cross-examination. Plaintiff then testified that he did not say the things that were in the signed statements with reference to the payments of his mother. When counsel for plaintiff argued the case to the jury he reflected on the good faith and integrity of the claim agent. At one point counsel for the bus company asked that the reporter be called in to take down the remarks of counsel about the claim agent in his closing argument. The argument of the bus company is that these remarks so inflamed the jury that the verdict was the result of passion and prejudice. The trial court went into this matter pretty thoroughly at the hearing of the

motion for a new trial. The conclusion was reached that the argument was not so inflammatory as to warrant a new trial. The trial court was much better able to pass on that question than is this court.

The next argument of defendants is that the judgment is excessive. The verdict was for $7,120. The trial court on the hearing of the motion for a new trial reduced this to $5,120. The amount prayed for by plaintiff was based on a contribution of $70 a month for eight years. The jury found a verdict for this amount plus the funeral expenses. The trial court thought this should be reduced somewhat by what the plaintiff would be able to earn in vacations. There was evidence that warranted the jury in reaching this verdict. Granted that an action such as this is purely compensatory, we see nothing wrong with this verdict if the jury believed the testimony of plaintiff and his aunt, as it had a right to do. Certainly the amount of this verdict does not shock the conscience of this court.

There is one other point in this case which was touched on at the argument. It has to do with the special questions. Question and answer 1 were as follows:

"1. Where, with reference to the center line of the highway, was the bus at the moment of collision? A. The front end of said bus was north of the center line, and the left rear wheel of the said bus was south or directly on the center line."

Questions and answers 2 and 3 were as follows:

"2. Where, with reference to the center line of the highway, was the truck at the moment of collision? A. The said transport truck was on or just north of the center line of said highway U. S. 40 at the time of the said collision with said bus.

"3. Upon which side, north or south, of the center line of the highway did the collision take place? A. The collision with the said bus and the said transport truck took place just north of the center line on highway U. S. 40."

The argument is made that these findings are inconsistent with each other because answer 1 fixed the position of the bus as the front end just north of the middle mark, while the left rear wheel of the bus was south and directly on the middle line, while the answer to the second question put the truck north of the middle line. It is pointed out that the answer to question 3 says the collision took place just north of the middle line. At first glance these findings seem to be in conflict. The fact is that the wheels of each vehicle

could be on the right side of the middle mark, but right up to it, and due to the part of each vehicle that extends beyond the wheels a collision such as we have here could have taken place. This and the fact that there was evidence that the bus swerved toward the truck just as the collision took place accounts for these three findings. The fact is both drivers were negligent under the circumstances by being right up to the middle mark, regardless of which one crossed it.

The only points raised by Evan Smith and the insurance company are that the trial was not had before a fair and impartial jury, and the misconduct of counsel. These questions have been already considered in this opinion.

The judgment of the trial court is affirmed.