No. 34,453

Ruben Trezise, *Appellant*, v. The Highway Commission of the State of Kansas, *Appellee.*

(96 P. 2d 637)

Opinion filed December 9, 1939.

*C. E. Carroll* and *A. E. Carroll,* both of Alma, for the appellant.

*Wint Smith* and *Otho Lomax,* both of Topeka, and *Ben Pickering,* of Wamego, for the appellee.

The opinion of the court was delivered by

Thiele, J.: Plaintiff brought an action to recover damages sustained by reason of an alleged defect in a bridge on a state highway. The trial court sustained a demurrer to his evidence, and he appeals.

As far as it is now necessary to notice, plaintiff's petition alleged that about 2 o'clock a. m. on July 18, 1937, he was driving his automobile south on highway 63 at a point where a highway bridge crossed Bartlett creek one-half mile northwest of Emmett, Kan.; that not exceeding thirty minutes prior to the time plaintiff reached the bridge it had collapsed and fallen into the creek; that plaintiff approaching the bridge was not aware of the fact the bridge had fallen until he had reached a point not exceeding five feet north of the bridge; that he was driving in a careful and prudent manner at a rate of speed not to exceed forty miles per hour and was catapulted through space and down to the floor of the collapsed bridge, damaging the automobile and permanently injuring the plaintiff. It was

further alleged that the injuries and damages sustained by plaintiff were due to the negligence, carelessness and omissions of defendant in that (a) the bridge was worn, rusted and unsafe for ordinary public travel; (b) that a truss rod connecting the top truss rod and the lower steel work of the bridge was completely broken and dangling in the air; (c) that the end truss beam was rusted, bent and broken; (d) that bolts connecting the joint of the top truss beam and end truss beam or batter post were not in place and were gone; (e) holes for bolts were rusted out and broken; (f) truss rods were rusted loose, bent and unfit, and the structure was not anchored to the abutments; (g) the timber in the bridge was old, rotten and broken; (h) bolts and rivets were rusted, loose and weak; (i) there was a broken shoe resting on the northwest corner of the abutment, and (j) the tie block was old and broken. It was further alleged generally that the defendant had more than five days' notice and specifically that the patrolman Kennedy had more than five days' actual notice of the defective condition of the bridge. There was also appropriate allegation of notice of claim to the highway commission. We need not detail plaintiff's claim of injury and damage, for that is not presently involved.

Defendant's answer denied generally all allegations of the petition not admitted, and denied specifically existence of any defect in the bridge. Defendant admitted, among other things, the highway was a part of the state system of roads and that notice of plaintiff's claim had been filed, and denied specifically the damage was caused by reason of a highway defect. It was alleged that the damages of which plaintiff complained were directly and proximately caused by the negligence of one Carl Eichman, who carelessly and negligently drove his automobile into the guardrails and batter post on the northwest corner of the bridge, causing the bridge to fall, and through no fault of defendant. At the trial the defendant demurred for the assigned reason the evidence failed to show the requisite five days' notice and "wholly fails to show the giving of notice of any particular defect which produced a dangerous condition in said bridge," and that the evidence failed to show "any defect or combination of defects that caused any bridge failure," and that the evidence failed to show any proximate cause. The trial court's ruling sustaining this demurrer is assigned as error.

In considering whether the trial court erred, we shall review the evidence, bearing in mind two often stated rules. One is that in con-

sidering a demurrer, the court considers the evidence in the light most favorable to the party adducing it, all inferences being resolved in his favor (*Fodor v. Interstate Transfer Lines,* 149 Kan. 174, 86 P. 2d 574; *Morrison v. Bandt,* 149 Kan. 200, 86 Pac. 480); the other that the evidence of the party adducing it shall be considered as true, that unfavorable parts shall be disregarded, contradictions and differences between direct and cross-examination shall not be weighed, and if there is any evidence which sustains plaintiff's case, the demurrer must be overruled (*Parker v. City of Wichita,* 150 Kan. 249, 250, 92 P. 2d 86, and cases cited).

The real question is, Did plaintiff's evidence make a prima facie case showing there was a defect in the highway and that the state highway commission had notice of it? It may be remarked that plaintiff, apparently anticipating the defense that the proximate cause of the plaintiff's damage was that the bridge was caused to fall by reason of Eichman's driving into the batter post and guardrails, offered the evidence of Eichman and a passenger in his car that the car had not struck the bridge in any manner; that the Eichman car was proceeding south at about twenty miles an hour and just as he drove on the bridge it collapsed and the car and its occupants fell with the bridge. Not a great while thereafter and while the Eichman car and its occupants were on the collapsed bridge, the plaintiff's car came along, reached the fallen bridge, jumped over the Eichman car and stopped on the floor of the collapsed bridge. Plaintiff personally testified he was proceeding south in his car at about thirty miles an hour; he came under a nearby railroad underpass and as he made a swing in the road he saw the banisters of the bridge in the glare of his lights and noticed nothing wrong until he got to where his lights would show the floor of the bridge and there was a black hole; it was too late to stop, and he went off into space and his car landed half way down across the bridge. By one witness the plaintiff showed that three or four years before the bridge collapsed a complaint was made to one of the highway commissioners that the bridge was unsafe for heavy travel. An additional floor and perhaps some other work was done and use of the bridge continued. About a year before the accident witness' truck had slid crosswise of the bridge and struck one of the side pieces of the bridge, but he had not told any employee of the highway commission about it. By another witness it was shown that four to six months prior to the accident he had noticed a broken rod with a turnbuckle on it that was broken,

part of it hanging down under the bridge, and that he talked with Kennedy, the highway patrolman; that he and Kennedy looked at the bridge, he had hold of the rod; they talked about what the rod was for, what damage it would do to the bridge, what support it gave to the bridge and why it was not fixed, and Kennedy said he did not think it made any difference, they were going to build a new bridge. Another witness testified to seeing a broken truss rod hanging down, saw the middle post of the bridge, saw where something had hit it and that it was twisted. Other witnesses testified to substantially the same thing, and that the bridge was about forty-five to fifty years old. Still another witness stated that in 1934 or 1935 a truck ran into the bridge, and at that time it shifted about two inches to the north. The above witnesses and others testified to conditions observed by them after the bridge had fallen; that the batter post (sometimes called the end truss beam) which had been on the northwest corner of the bridge was rusted through in places; the stringers of the bridge at the north end were rotten; that there was a broken tie rod at the south end of the bridge. It was an old break, not broken off, but looked as though it had rusted in two; that there was a broken rod on the west side of the bridge; that one of the shoes (on which the bridge rested on the abutments) was completely broken in two and was an old break. An engineer testified the effect of a weakened batter post would cause "eccentricity in the column," would increase the stress above what it would be if the post were not damaged; he explained the purpose of the truss rods was to take up and even the stress of a load on the bridge, and if the particular truss rod was broken it would lessen the capacity. Certain pieces of the collapsed bridge were in court and referred to by this witness. He explained that a certain piece was called a rocker, the purpose of which was to transfer the load of the bridge down on the bearing plate or shoe, and the purpose of the latter was to spread the load on the stone or cement abutment. Certain photographs were introduced showing the bridge in question to have been constructed with iron or steel trusses, with a wooden floor, and that the wooden sill or piece resting on the north abutment was badly rotted. Under the rule above stated, we need not notice other testimony from which conclusions or inferences unfavorable to the plaintiff might be drawn.

Under G. S. 1935, 68-419, any person who shall, without contributory negligence on his part, sustain damage by reason of a defective bridge on a state highway may recover damages from the state of

Kansas, if any patrolman had notice of the defect five days prior to the time when the damage was sustained. The evidence here shows the plaintiff sustained his damage at the collapsed bridge and that he was without contributory negligence.

To justify the ruling which it sought and obtained from the trial court, appellee in its brief selects portions of the testimony of various witnesses, the inferences from which are unfavorable to the appellant, and from the conclusions thus reached, it is argued there was no evidence of any defective condition of the bridge. Faced with the brutal fact the bridge fell, and the necessity of explaining, appellee asks us to ignore the testimony of the occupants of the Eichman car that their car did not strike the batter posts or some other part of the bridge thus causing it to fall, because, it is argued, it is unescapable from the photographs that the Eichman car did strike the northwest corner of the bridge. We see nothing about the photographs that leads to any such unescapable conclusion. They show much wreckage, but an examination of them alone leads as much to the conclusion that some part of the east part of the bridge failed as that the northwest post was hit and broken. If we indulge in surmises, the pictures show the bridge in falling went to the east, therefore the east side gave way, for had the northwest post broken then the bridge would have fallen to the westward. The credibility to be given to the testimony of the occupants of the Eichman car, and the inferences to be drawn from the photographs were for the jury, and it may not be said the evidence discloses there was no defect in the bridge. On the contrary, the evidence shows that doubt of the safety of the bridge had existed in the minds of some people for some time. It is true that when complaint was made some years ago, some repairs were made on the bridge, and we assume for present purposes that the condition of the bridge was then ascertained and adequate repairs were made. Thereafter, however, if the testimony is to be credited, as indeed it must be at this time, a truck slid into the side of the bridge and damaged one of the parts of its framework, the bridge slipped endways on its abutments or foundation, one or more of its truss rods were broken or loosened and hung down. With the bridge in this condition, attention of the patrolman was directed to the broken rod and its effect was discussed with him. He stated he did not think it made any difference, they were going to build a new bridge. A good many inferences could be drawn from this testimony, but we shall not attempt any statement. Was it necessary

that some person tell the highway commission or one of its employees specifically what was wrong with the bridge? We think not. The complaint having been made of the defect, even though it might have been minor instead of major, was sufficient that proper inspection of the bridge be made. The complaint was within four to six months of the date the bridge fell. An inspection would have shown not only the broken truss rod, but also the damaged middle post of the bridge, the broken shoe, the rotten timber resting on the abutment, the badly rusted batter post, and possibly that the bridge had slipped on its foundation. Appellee directs our attention to *Parr v. Shawnee County*, 70 Kan. 111, 78 Pac. 449, as being quite in point. That case deals principally with notice. Although there are quotations therein as to particularity of notice of defect, we do not believe they are decisive here. In the case before us, there was specific notice of a defect, which was apparently ignored. It is true the highway commission is not an insurer of the safety of travelers on its highways, but it may not ignore specific complaint of a defect, nor the existence of defects which would be disclosed if inspection were made following complaint of specific defects, and thus escape liability. The theory of the statutes creating the commission and defining its powers, duties and liability includes the duty of maintenance and contemplates the doing of what is necessary in the way of inspection to determine what maintenance is necessary. The evidence is the highway patrolman thought the broken truss rod made no difference and the inference from the remainder of his statement is, Why do anything about the present bridge when a new one was to be erected? and that nothing was done.

We shall not devote much time to the question of what particular defect in the bridge caused its fall. We do not think the plaintiff had to prove beyond a doubt that a particular piece gave way first. Some of the evidence tends to show the bridge was like the "one-hoss shay" and when any part failed the whole would fall. The plaintiff's evidence tended to show a series of defects which, coupled together, caused its fall, and in that view it is not very material which particular element failed first.

We are of opinion the trial court erred in sustaining the defendant's demurrer. Its ruling is reversed and the cause remanded.