No. 38,325

HOTEL KANSAN OPERATING COMPANY, a corporation, *Appellant,* v. OSCAR L. OLSON, doing business as OLSON OIL COMPANY, and T. J. MAHAFFEY, doing business as MAHAFFEY PLUMBING COMPANY, *Appellees.*

(232 P. 2d 417)

Opinion filed June 9, 1951.

*Ernest Rice,* of Topeka, argued the cause and *Harry K. Allen, L. M. Ascough, John K. Corkhill, Marion Beatty* and *Edward H. Sondker,* all of Topeka, were with him on the briefs for the appellant.

*Tinkham Veale,* of Topeka, argued the cause and was on the briefs for Oscar L. Olson, appellee; *O. B. Eidson,* of Topeka, argued the cause and *T. M. Lillard, Philip H. Lewis* and *James W. Porter,* all of Topeka, were with him on the briefs for T. J. Mahaffey, appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages alleged to have been sustained when an oil tank located partly under plaintiff's hotel, exploded. The appeal is from orders sustaining demurrers of both defendants to plaintiff's third amended petition.

We shall refer to the third amended petition as the petition. It alleged first that plaintiff operated a hotel and Olson was an oil dealer and Mahaffey a plumber; that an explosion on August 5, 1948, damaged plaintiff; that before August 5, 1948, plaintiff asked Olson to drain and clean a fuel oil tank located partly under the

hotel and partly under the sidewalk; "That the Hotel Kansan Operating Company was at the time a regular purchaser of fuel oil from said Olson Oil Company and that said Olson promised to drain and clean the tank as requested." The petition then alleged that Olson entered into a contract with Mahaffey, the details being unknown to plaintiff, whereby he was to do certain parts of the work and on August 5, 1948, Mahaffey sent Peterson, his regular employee, with a truck, a pump and other equipment to the hotel and instructed him to report to Olson and do whatever he should direct. The petition then alleged that Topeka Township had a contract with Olson and Mahaffey to use the oil and sludge taken from the tank on its roads, and its employee, one Thompson, appeared at the hotel and proceeded to assist Peterson under the direction of Olson and "both Peterson and Thompson acted under the direction and supervision and in the presence of, and with Olson, in removing covers, inserting a hose into said oil tank, and pumping oil and sludge therefrom." The next paragraph alleged that Peterson and Thompson, "with the knowledge and consent, and in the presence of Olson, and on Olson's direction, went to the Hotel Kansan boiler room and picked up an ordinary electric light extension cord, with an electric light bulb and metal shield on the end thereof, which said cord belonged to the plaintiff and was customarily used in the boiler room, and dropped said cord into said oil tank, for the purpose of ascertaining how much oil and sludge still remained in the tank." The petition then alleged that as Thompson was pulling the cord, bulb and shield from the tank it created a spark and caused a series of explosions. The petition then contained three paragraphs, as follows:

"That at the time and place of said explosion and fire, Peterson and Thompson were assisting defendant Olson, in accomplishing the job that Olson had agreed to do, and were on business for and under the supervision, direction and control of Olson. That plaintiff does not know where defendant, Olson, was at the particular moment of said explosion.

"That at the time and place of said explosion and fire, Peterson was a regular servant and employee of T. J. Mahaffey d/b/a Mahaffey Plumbing Company, was on business for Mahaffey, and under his direction and control, in that Peterson was carrying out the instructions of Mahaffey, as stated in paragraph 5.

"That the explosion and fire and resulting damage to plaintiff's property, were proximately caused by the negligence of Peterson and Thompson, in putting into a fuel tank an ordinary electric light extension cord, or any kind of light other than a 'vapor proof' light; and by the negligence of defendant Olson, in directing and permitting said electric light extension cord to be put into said tank, when each of them knew or should have known that to do so might ignite vapors and cause an explosion."

The balance of the petition was a statement of and a prayer for damages in the amount of $74,295.04.

Mahaffey demurred to the petition on the ground it did not state facts sufficient to constitute a cause of action.

Olson filed a motion that the plaintiff be directed to make its petition more definite and certain by stating where Olson was at the time Peterson and Thompson secured the light cord and bulb and by stating what direction Olson gave Peterson and Thompson concerning the light. On a hearing of this motion counsel for plaintiff stated he could give no further information, whereupon Olson withdrew his motion. Olson then demurred to the third amended petition on the ground it failed to state a cause of action against him. The demurrers were each sustained—hence this appeal.

We shall consider first the appeal as to the demurrer of Olson. On this appeal Olson states the rule that negligence must be pleaded and proven and a judgment for damages cannot be predicated alone on the fact that an injury and damage occurs unless it was the result of some negligence on the part of the person claimed to be liable. Many authorities are cited to sustain this rule. It is undoubtedly the law. Here, however, the petition alleged that Thompson and Peterson were working under Olson's supervision and orders and that they on Olson's direction procured the light which caused the explosion and that the use of such a light was negligence. A reasonable interpretation of this pleading when taken in its entirety is that Peterson and Thompson were both employees of Olson for this particular job. At least it cannot be said that the petition does not allege any negligence on the part of Olson, Peterson and Thompson. Olson insists there is no specific allegation that he directed Thompson or Peterson to put an electric light bulb in the tank. The allegation is first that Olson undertook the work; then an allegation that Peterson and Thompson were under his direction; then an allegation that they with the knowledge and consent and in the presence of Olson procured the light and cord; then an allegation that they were assisting Olson and under his supervision, direction and control; then an allegation that the explosion was caused by the negligence of Peterson and Thompson in putting that sort of a light into the tank and by the negligence of Olson in directing and permitting such a cord to be put into the tank when each of them knew, or should have known, that to do so might ignite vapors and cause an explosion.

Olson points out six deficiencies in the petition on account of which he argues the trial court ruled correctly in sustaining his demurrer.

First

"There is no allegation that Olson was to furnish or did furnish the cord, bulb and shield, which the petition alleges was defective and caused the explosion."

As to this alleged deficiency, the petition alleged that Peterson and Thompson procured the light with the knowledge and consent and in the presence of Olson and it alleges that they were at all times under his direction and control.

Second

"There is no allegation that Olson knew or should have known that the cord, bulb and shield, which the petition alleges belonged to the appellant company and which was in the boiler room and furnished by employees of the appellant company to Thompson, was defective."

As to this alleged deficiency, the theory of the petition is that the explosion was caused by the use of an ordinary light rather than a vapor proof light. It is nowhere claimed that it was defective, only that it was the wrong kind of a light. This is sufficient statement of negligence to go to the jury.

Third

"There is no allegation that Olson was even in or about the boiler room or in the vicinity of the oil tank at the time the bulb was placed in the oil tank by Thompson, or at the time of the explosion."

As to this alleged deficiency, the petition alleges that every act of Peterson and Thompson was in the presence of Olson.

Fourth

"There is no allegation that Peterson and Thompson were assisting in the portion of the work which Olson was to do in connection with cleaning out the tank and removing the sludge therefrom, the allegation being that Thompson was an employee of the township and Peterson was an employee of Mahaffey at the time of the explosion, which would suggest they were at that time performing the portion of the work of removing the sludge from the tank which was delegated to Mahaffey, and not to Olson as alleged in the fifth paragraph of the third amended petition."

As to this, the petition clearly alleges that Olson undertook to do all the work and procured Mahaffey to help him. The petition is not drawn under any theory that there was a division of the work to be done between Olson and Mahaffey, but the plain allegation is that Olson was in charge of all of it.

Five

"There is no allegation in the petition that Olson was paid or was to be paid anything for his service in doing the part of the work in removing the oil from the tank, which was delegated to him."

As to this alleged deficiency, there is an allegation Olson agreed to drain and clean the tank and that plaintiff was a regular purchaser of oil from Olson.

Six

"The statement made by Mr. Beatty, counsel for the appellant, at the time of the hearing of Olson's motion to make the third amended petition more definite and certain by stating in what respect Olson was guilty of negligence, practically exonerated Olson from any negligence by stating it was impossible for appellant to state any negligence not mentioned in the third amended petition."

As to this alleged deficiency, the third amended petition alleges that Olson was guilty of negligence by directing and permitting Thompson to use the sort of a light they did use.

Olson argues the petition should be strictly construed against plaintiff because plaintiff successfully resisted his motion to make the third amended petition more definite and certain by stating where Olson was when Peterson and Thompson procured the light cord. This motion was not good for the reason that the third amended petition alleged that this was done in the presence of Olson. A more definite statement was not necessary. Therefore, it is not necessary to give the third amended petition a strict interpretation.

Olson states that plaintiff is attempting to rely on the doctrine of *res ipsa loquitur* and then proceeds to demonstrate that the petition does not state a good cause of action under that theory. This petition is not drawn under the doctrine of *res ipsa loquitur* but on the theory of specific negligence of defendants in using the wrong type of a light.

We hold that the third amended petition stated a good cause of action against Olson and Olson's demurrer to the petition should have been overruled.

We consider now the demurrer of Mahaffey.

The plaintiff argues the petition alleges that Mahaffey agreed to do certain parts of the work and Olson certain parts and Mahaffey sent Peterson, his employee, to do this work under Olson's direction —hence it states a cause of action against Mahaffey.

The trial court sustained Mahaffey's demurrer on the theory that Peterson was Mahaffey's servant loaned to Olson and acting

under Olson's control and direction when the explosion occurred. Mahaffey relies in the main on what we held in *Moseman v. Penwell Undertaking Co.*, 151 Kan. 610, 100 P. 2d 669. This takes us to a critical examination of the petition. A reasonable interpretation is that the only person with whom the plaintiff dealt was Olson. Such is the meaning we give the allegation "Olson promised (the plaintiff) to drain and clean the tank." "Olson contacted T. S. Mahaffey." "Olson and Mahaffey entered into an agreement." The petition does not say that Mahaffey sent Peterson, one of his regular employees, to the hotel. It is clear and explicit, however, in its allegations that Peterson was to report to Olson and do whatever Olson ordered. From then on the petition states a situation not that Olson and Mahaffey had undertaken a job and were doing it together, but rather one where Olson had undertaken to do the work and had made a contract with Mahaffey, whereby Mahaffey furnished Peterson to him.

Such is the only meaning to be had from the ninth paragraph, which reads:

"That at the time and place of said explosion and fire, Peterson and Thompson were assisting defendant Olson, in accomplishing the job that Olson had agreed to do, and were on business for and under the supervision, direction and control of Olson."

True the next paragraph alleges that Peterson was the servant and employee of Mahaffey and at the time of the explosion was on business for Mahaffey and under his direction and control. This allegation must be construed, however, in connection with the other allegations of the petition that Mahaffey had directed Peterson to report to Olson and to do whatever Olson should direct.

We dealt with such a situation in *Moseman v. Penwell Undertaking Co.*, supra. There the action had been brought against the undertaking company, in whose interest the employee of a florist had been transporting flowers to the country in a truck. It was analogous to what we would have here if the plaintiff had sued Olson alone and had alleged negligence of Peterson while he was working for Olson. We cited several authorities to the effect that a general servant of one party may be loaned by his master for some special purpose so as to become for that service the servant of the party to whom he is loaned and to impose on him the usual liabilities of a master. We said the defendant had contracted to furnish the Wood family a complete funeral. So here the petition alleged

"the plaintiff asked Olson to drain and clean the tank." "Olson promised to drain and clean the tank as requested." "No mention so far of either Mahaffey or Peterson." Appellant points out that Olson and Mahaffey entered into a contract "whereby Mahaffey was to do certain parts of the work." The fact remains, however, that Olson had agreed with the hotel to do the work and as far as this petition states the hotel knew nothing about Mahaffey. The rule in such a case is that the most satisfactory test is under whose control was the servant working. (See *Hurla v. Capper Publications, Inc.*, 149 Kan. 369, 87 P. 2d 552.) If we apply that test here we find that in just about every paragraph of the petition the plaintiff put Peterson under the direction and control of Olson.

The petition did not state a cause of action against Mahaffey and his demurrer was correctly sustained.

It follows the judgment of the trial court is reversed as to Olson, and affirmed as to Mahaffey.

WERTZ, J. (dissenting in part): I am unable to agree with the majority opinion of the court as to the construction placed on plaintiff's third amended petition as set forth in paragraph two of the syllabus and the corresponding part of the opinion. I adhere to the rule of law as laid down in *Moseman v. Penwell Undertaking Co.*, cited in the majority opinion. However, I do not think the rule as there announced is applicable to the instant case under the allegations of plaintiff's petition. I am of the opinion that defendant Mahaffey's demurrer to the third amended petition should have been overruled.