**Wanda Lee JONES, individually, and as mother and next friend of Thomas Frederick Jones and Stephen Lewis Jones, minors, Appellants,**

v.

**Donald A. CHUBB, doing business as Neon Tube Light Company, Appellee.**

No. 4868.

United States Court of Appeals
Tenth Circuit.

Nov. 16, 1954.

Charles L. Davis, Jr., Topeka, Kan. (Howard A. Jones, Donald Patterson, and William E. Haney, Topeka, Kan., on the brief), for appellants.

David H. Fisher and Irwin Snattinger, Topeka, Kan., for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Donald F. Jones was killed by the collapse of a wall which separated the place of business where he worked from the adjoining building. The collapse was caused by an explosion following a fire which started in the adjacent building. His widow brought this action on behalf of herself and two minor children to recover damages. The specific act of negligence pleaded was that the defendant, who was engaged in the business of fabricating and testing neon tube signs, negligently exposed a sign to high voltage electric current while it was wet with inflammable lacquer which caused a fire resulting in the explosion of materials negligently stored in the premises.[1] At the close of the plaintiff's evidence, the trial court directed the jury to return a verdict for the defendant. The plaintiff appealed from a judgment entered on that verdict.

■ The plaintiff's evidence, which must be accepted as true,[2] establishes these pertinent facts: The defendant, Donald A. Chubb, doing business as "Neon Tube Light Company", occupied the premises located at 215 West Sixth Street in Topeka, Kansas, where he was engaged in the business of assembling, painting, and designing display and advertising signs. His place of business was adjacent to the office of the Commerce Acceptance Corporation and was separated from it by a brick firewall. Jones was the local manager of the loan company. On May 12, 1951, one of the defendant's employees was blocking out units on a neon sign at the defendant's place of business. His work consisted in painting a portion of glass in between the letters of a sign and the backs of the letters with an inflammable lacquer paint. Shortly after noon, he dipped a unit in a pan containing about two gallons of lacquer and then hung the sign on wire hooks suspended from the ceiling to allow wet lacquer to drip back into the pan. As was customary, the employee allowed the sign to hang about one minute. He then turned a switch which caused 12,000 volts of electricity to pass into the sign. When the switch was thrown, the unit burst into flames and broken glass fell into the pan and ignited the lacquer. The flames could not be con-

1. Paragraph 5 of the Complaint reads as follows:

"That on or about June 12, 1951, the defendant and his employees, in the scope of their employment with the defendant, were fabricating and testing neon tube signs, and while so doing negligently turned high voltage electricity into a sign for the purpose of testing it while it was wet with highly inflammable lacquer and while it was suspended above and in close proximity to an open container of highly inflammable lacquer or other liquid. That as a result of said negligence, a fire ensued, which consumed the premises occupied by the defendant and caused an explosion of other highly inflammable and explosive materials negligently stored in the premises. The aforesaid explosion blew down the brick firewall, causing it to fall into the adjoining premises and upon the decedent, Donald F. Jones, causing his death."

2. Siegrist v. Wheeler, 175 Kan. 11, 259 P.2d 223; Briggs v. Burk, 174 Kan. 440, 257 P.2d 164; Herron v. Chappeil, 174 Kan. 350, 255 P.2d 632; Perry v. City of Wichita, 174 Kan. 264, 255 P.2d 667; In re Hayden's Estate, 174 Kan. 140, 254 P.2d 813, 36 A.L.R.2d 1278; Tuggle v. Cathers, 174 Kan. 122, 254 P.2d 807; Cain v. Steely, 173 Kan. 866, 252 P.2d 909; Hammargren v. Montgomery Ward & Co., 172 Kan. 484, 241 P.2d 1192; Fowler v. Mohl, 172 Kan. 423, 241 P.2d 517; Palmer v. Land & Power Co., 172 Kan. 231, 239 P.2d 960; Adams v. Dennis, 171 Kan. 32, 229 P.2d 740; Fry v. Cadle, 171 Kan. 14, 229 P.2d 724; Roddy v. Hill Packing Co., 156 Kan. 706, 137 P.2d 215; Picou v. Kansas City Public Service Co., 156 Kan. 452, 134 P.2d 686; Boxberger v. Texas Co., 156 Kan. 471, 134 P.2d 644; Greiving v. La Plante, 156 Kan. 196, 131 P.2d 898; United States v. Blair, 10 Cir., 193 F.2d 557.

trolled with the available fire extinguishers and spread rapidly throughout the building. The evidence established that there was a paint storeroom in the extreme back end of the building and in a room which was offset to the west. There was no evidence of the amount of paint, if any, which was stored in the paint room at the time of the explosion or that the fire reached the paint room prior to the explosion. It appears that the explosion occurred in the main part of the building.

The fire chief testified that the smoke in the building was of a color to indicate the presence of combustion gas. In his opinion, the explosion resulted from the presence of combustion gas. He expressed no opinion as to the cause or source of the gas, or where it came from. The record is entirely devoid of any evidence of storage, except for the pan of lacquer, or the presence of explosives or inflammable material in the building occupied by the defendant.

As the fire spread, Jones anticipated that the loan company office might be destroyed and he began to remove personal property therefrom. He made several trips into the office with other persons for this purpose. The heat at that time had become very intense and before Jones left the building on the last trip an explosion occurred on the premises occupied by the sign company. Jones was killed by falling debris from the wall after its collapse was caused by this explosion.

The specific negligence relied upon was the use of high voltage electricity to test the sign wet with highly inflammable lacquer while it was suspended immediately above an open container of such lacquer. The only evidence offered relating to the use of electricity in testing the signs was that of the defendant's employee who was doing the work. He testified that he had been doing this type of work for two or three years; that during that time he had performed the same testing operation "thousands of times"; and that he had followed the same procedure on the morning preceding the fire. There was no evidence that his action was improper, or one which a reasonably prudent person would not have followed. There was no evidence that the use of 12,000 volts in testing neon signs under similar conditions was not the proper way to test them, or that the use of that voltage was dangerous and likely to cause a fire.[3] It was not alleged or proved that the neon

3. The testimony of the employee relating his work and what he did when the fire started is as follows:

"Q. Now, will you describe to the jury just what you did on this particular occasion immediately before the fire started?—A. Well, I just finished dipping this unit and blocking the letters out and I hung it up on these wire hooks suspended from the ceiling.

"Q. What do you hang that over, Mr. Frantz?—A. We hang it over that pan that we block them out in.

"Q. Is that so that if there is any wet lacquer it will drip right back into the same pan?—A. That is right.

"Q. And about how high is this over that pan?—A. About two feet.

"Q. And how much lacquer did you have in this pan underneath the unit?—A. Oh, I would say approximately two gallon.

"Q. Now, was there any kind of a cover on that pan of lacquer down there?—A. Not at that particular time.

"Q. And would you describe that pan?

—A. Well that pan was, I would say, about eighteen inches square, and the pan itself was about three inches deep.

"Q. And then what did you do—I withdraw that. How long was it when you finished blocking before you hung the unit up over the pan?—A. Well, we just dip it in the pan, raise it up and shake it a little, and then hang it up on the two hooks.

"Q. And then just sort of one continuous movement, is it?—A. Yes, sort of, yes.

"Q. Then how long was it before you turned on the electricity to test that unit?—A. Oh, it would be approximately a minute, I would imagine.

"Q. And then did you throw the switch?—A. Yes.

"Q. And that is the switch that controls this 12,000 volts you mentioned?—A. Yes.

"Q. What happened then?—A. The unit just burst in flame.

"Q. What happened to the flames on the unit?—A. Well, they started burn-

tube was defective. There was no evidence that the employee did anything wrong in preparing the sign and in testing it. No attempt was made to prove what caused the lacquer on the tube to ignite. The proof goes no further than to establish the fact that on this particular occasion when the electricity was connected with the sign, the lacquer caught fire.

It is settled law in Kansas that negligence must be pleaded and proved and that a judgment for damages cannot be sustained on the fact of an injury and damages alone. There must be evidence that the injury and the damages were the result of some negligence on the part of the person claimed to be liable.[4] Negligence may not be presumed and cannot rest upon mere conjecture.[5] It is also well settled in Kansas that it is within the province of the jury to determine whether upon a given state of facts negligence should be inferred, but that it is the duty of the court to first determine upon undisputed facts, considered most favorably to the plaintiff, whether negligence can be inferred.[6] We agree with the trial court that there were no facts from which negligence could be inferred.

The plaintiff relies upon Hotel Kansan Operating Co. v. Olsen, supra, and Rost v. Union Pacific R. Co., 95 Kan. 713, 149 P. 679, as authority for her contention that the evidence in the instant case was sufficient to go to the jury. These were explosion cases which recognize the rule in Kansas that negligence must be pleaded and proved. In the Hotel Case [171 Kan. 295, 232 P.2d 420] it was alleged that the defendant lowered into an oil tank "the wrong kind of a light" which caused the explosion. It was held that this was an allegation of negligence.

ing on the unit and the glass broke and fell down into the pan and then the pan ignited.

"Q. And that is the pan of lacquer you have described?—A. Yes.

\* \* \* \* \* \*

"Q. How long had you been doing this type of thing for Mr. Chubb?—A. Approximately all the time I had worked for him.

"Q. Now, you have described to the jury that you were blocking out or dipping a piece of tubing into this pan, is that correct?—A. Yes.

"Q. Had you ever done that before? —A. Oh, thousands of times.

"Q. The same way that you were doing it this day?—A. Yes.

"Q. Had you done that same thing during the morning before lunch?—A. All morning. I had done it all that morning.

"Q. Did you do anything different at this particular time than you had done before?—A. No.

"Q. Did you do anything different this particular time than you had done the thousands of times before?—A. No."

4. Emrie v. Tice, 174 Kan. 739, 258 P.2d 332; Hotel Kansan Operating Company v. Olson, 171 Kan. 295, 232 P.2d 417; Beecher v. Stepanian, 170 Kan. 201, 224 P.2d 1017; Kinderknecht v. Hensley, 160 Kan. 637, 164 P.2d 105; Glenn v. Montgomery Ward & Co., 160 Kan. 488, 163 P.2d 427; Miller v. Gabbert, 154 Kan.

260, 118 P.2d 523; Stroud v. Sinclair Refining Co., 144 Kan. 74, 58 P.2d 77. In Kinderknecht v. Hensley, supra [160 Kan. 637, 164 P.2d 108], the Supreme Court of Kansas said: "In the determination of such a question it must be conceded at the outset that the mere fact an accident—in this case an explosion—occurs and injury results is not sufficient to establish liability. It is elementary law in Kansas that before a plaintiff can recover in an action predicated upon negligence he must both *allege* and *prove* the negligence of the defendant which *was the proximate cause of the injury for which recovery is sought.*"

5. Primm v. Kansas Power & Light Co., 173 Kan. 443, 249 P.2d 647; Modlin v. Consumers Cooperative Ass'n, 172 Kan. 428, 241 P.2d 692; Pierce v. Schroeder, 171 Kan. 259, 232 P.2d 460; Crowe v. Moore, 144 Kan. 794, 62 P.2d 846.

6. Atherton v. Goodwin, 163 Kan. 22, 180 P.2d 296; Jones v. Kansas City Public Service Co., 158 Kan. 367, 147 P.2d 723; Greiving v. La Plante, 156 Kan. 196, 131 P.2d 898; Cleghorn v. Thompson, 62 Kan. 727, 64 P. 605, 54 L.R.A. 402. Cf. Independent-Eastern Torpedo Co. v. Ackerman, 10 Cir., 214 F.2d 775, 777. In this last case in discussing this subject we said: "But the province of fact finding and inference drawing must be exercised in the realm of probability, not speculation, surmise and conjecture."

In the Rost Case [95 Kan. 713, 149 P. 680] the act of negligence alleged was the use of "what appeared to be an extraordinary amount of explosives" when blasting near plaintiff's building.

Judgment affirmed.