No. 35,167

MILDRED MILLER and DALLAS MILLER, by His Mother and Next Friend, MILDRED MILLER, *Appellees*, v. J. B. GABBERT, doing business as J. B. GABBERT OIL COMPANY, ST. PAUL MERCURY INDEM-NITY COMPANY OF ST. PAUL, MINNESOTA, and PAUL CRAWFORD, *Appellants*.

(118 P. 2d 523)

Opinion filed November 8, 1941.

*C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe, Wayne Coulson, Paul R. Kitch,* all of Wichita, and *L. E. Weltmer,* of Mankato, for the appellants.

*C. E. Birney,* of Hill City, and *A. B. Mitchell,* of Lawrence, for the appellees.

The opinion of the court was delivered by·

THIELE, J.: This was an action by the widow and son of Jonas Miller for damages for his wrongful death as the result of a fire which occurred at his filling station in Mankato. From a judgment in favor of plaintiffs the defendants appeal, the assignments of error including a number raising the sufficiency of the evidence to sustain a cause of action and the judgment rendered.

For our purposes it may be said the petition charged that the defendant J. B. Gabbert, doing business as J. B. Gabbert Oil Company, was duly licensed as a motor carrier and held a requisite license from the state corporation commission, and was the owner of a particular truck used to transport gasoline and covered by a policy of insurance issued by the defendant insurance company, and on the day in question driven by the defendant Crawford; that Jonas Miller

owned and operated the filling station under a lease from defendant Gabbert; that Gabbert was familiar with the storage capacity of the equipment, but on July 1, 1939, delivered a truck load of gasoline that could not be fully delivered, in violation of the regulations prescribed by the state fire marshal prohibiting certain unloadings of gasoline except where the storage facility at a service station permitted the dumping of an entire compartment of the delivering truck. Among other acts, it was charged that Crawford, as driver of the truck, permitted the underground tank being filled to overflow and soak the ground for an area around the tank, and that later a barrel was procured and filled with gasoline. In the course of these things, much detailed in the petition, it is alleged the gasoline became ignited and Miller suffered burns from which he died. Defendants Gabbert and Crawford were charged with negligence in seven particulars: (a) In filling the transport truck to a capacity greater than possible to unload in the Miller tank. (b) In attempting to unload that gasoline into the tank. (c) In not observing and staying close to the tank to watch the unloading. (d) In overflowing the underground tank and spilling great quantities of gasoline on the ground. (e) In not effecting a metal contact from the tank to the ground. (f) In attempting to unload gasoline at two different stations from the same load. (g) That defendant, in violation of law, delivered gasoline and put it in Miller's tank without his calling for it, from a partially loaded truck which had been unloaded in part to another station. (h) In unloading gasoline in an underground tank and reloading the same.

Defendants' answer put in issue any negligence on their part and charged that Miller's death was the proximate result of his own negligence in that he was entirely familiar with the unloading and should have taken precautions for his own safety, which he failed to do, in that he assisted in unloading the gasoline, although he knew his assistance was not required, and in that he caused the gasoline to ignite by striking a match in the immediate vicinity of the unloading operation, etc. Defendants further alleged that if they were guilty of any negligence it was obvious to Miller who was an experienced filling-station operator, who should have taken precautions for his own safety, and that if defendants were guilty of negligence Miller was likewise guilty of negligence which contributed to cause the fire and his death. Plaintiffs' reply was a denial of affirmative matter in the answer.

The trial court denied defendants' motion for judgment on the pleadings. Defendants' objection to the introduction of evidence, for the reason that under the pleadings and plaintiffs' opening statement no cause of action existed, was overruled with the understanding it could be renewed later. Thereafter a demurrer to the evidence was interposed and was overruled. Those rulings are all assigned as error. Our conclusions on the last one render it unnecessary to discuss the first two.

In view of the rule respecting test of sufficiency of evidence as against a demurrer (*Shoup v. First Nat'l Bank*, 145 Kan. 971, 975, 67 P. 2d 569; *Trezise v. State Highway Comm.*, 150 Kan. 845, 96 P. 2d 637) we limit our statement to the evidence elicited on direct examination, but omit explanatory details and evidence as to matters not here important. From a sketch furnished, it appears the filling station building faced the north and sat back some distance from the street, the driveway coming in from the northwest corner making an arc of a circle and passing out at the northeast corner.

Mildred Miller, the widow of Jonas Miller, stated there was an island in the driveway north of the building, and on which there were two pumps. East of the above island, on the south edge of the driveway and about thirty-five or forty feet northeast of the building was another island with two pumps. These pumps sat on concrete bases about six or eight inches above the ground. At a point east of the building about midway between the islands but to the south of them and the driveway were three underground tanks lying north and south having vents at the north end which extended above the ground six or eight inches. The west tank contained bronze gasoline; the middle tank contained white gasoline and the east one was used for distillate. On June 30 Miller had called Gabbert for some fuel and it was delivered about 6:30 p. m. on July 1 by Paul Crawford in a Ford truck. Crawford drove to the tanks to unload and Mr. Miller went to the truck. About thirty minutes was spent unloading. Mr. Miller was in and out of the building, but Mrs. Miller was inside the building all the time. Their son, Dallas, drove into the station and stayed until the fire occurred. Mr. Miller left and was gone about fifteen minutes and returned with two metal gas barrels, and he and the son carried them out and set them on top of the underground tanks. The doors and windows of the building were all open and she smelled gasoline fumes. When the fire started witness was standing at the north door of the building. Mr. Miller was

out helping unload the gasoline, but neither he nor Mr. Crawford was in her view. Her first knowledge of the fire was when she heard a noise. "It just went—shoo, just like that." It wasn't an explosion. When she heard the sound she turned around and looked out the south door and saw a ball of fire pass that door. At the time she heard the noise her son Dallas was talking to her. She grabbed her money and books and ran out the west door and met Crawford coming in. He wanted a quilt, and she told him to go in and get one from a bed, and he did that. She went across the street. Mr. Miller was south of the house (which house is referred to is not clear), and his clothing was badly burned. The remainder of her testimony deals with assistance to Mr. Miller.

Dallas Miller, the son, testified he drove his car into the station about 6:30 p. m. and parked on the north side of the defendant's truck, his father and Crawford then being on the south side. He went around to the south side and noticed that around the air vent of the middle tank there was a wet space having a radius of five or six feet. His father wanted to use witness' car and was gone with it for about fifteen minutes. While he was gone Crawford drove his truck down to the east pump and was putting white gasoline in the back compartment of the truck. When the father returned he brought two oil barrels in the trailer. Witness helped him unload the barrels, which were set on top of the tanks. Witness took his car, unhooked the trailer and put the car behind the truck. While his father was gone Crawford, after loading the white gasoline, had backed the truck to the tanks again and when the father returned the back end of the truck was even with the west pump on the east island, and one end of the hose was sticking in the underground tank pipe and the other was lying on the ground. Witness came back to the north side of the building and put gasoline in his car and was checking the oil. He was hooking down the hood when he heard a funny sound and looked up and all the ground was afire. The sound was a "whish" sound and he saw fire on the south side of the truck above the tanks. He didn't know where Crawford was when he heard the noise, and next saw him when Crawford ran between him and the house and holloed for him to call the fire department. He didn't see his father at the time. Witness got out to the corner and saw his father standing to the south of the house, no one being with him. He further testified it was wet around the middle tank and there were a few little pieces of glass and some rocks and

nails there. One gasoline barrel was sitting on top of it and the hose was lying there. The fire burned on top of the tanks around the middle tank, and burned more to the north than in any other direction. The ground slopes to the northwest. They set the barrels beside the underground vent, they were empty when set down. He didn't see the damp spot after he took the trailer off his car. He didn't know whether Crawford put any gasoline in the tanks while his father was gone, but didn't think he did. On redirect examination he stated he saw the barrels after the fire and there was gasoline in one of them. There were two other barrels which were empty. After things cooled off he looked around and the barrel that had the end blown out still had the bung in it and the other was lying there.

Frank Grimes stated he was the brother-in-law of Jonas Miller and examined the premises after the fire and there was a space about ten by twenty feet where the fire had burned, the center of the space being about ten feet east of the tanks—the long way being east and west—and that the ground where the fire had burned had been clean before the fire. He stated the vent pipes were fourteen or eighteen inches above the ground; that after the fire three barrels were lying on top of the tanks, the top had been blown from one and the bungs were out of the other two; that he examined the premises in the evening after the fire and there was some gasoline running out of the pipe out of the middle tank and he closed the lid on the pipe. He, as well as another witness, said it was a very hot day.

At the close of plaintiff's evidence defendants demurred, asserting that no evidence had been adduced which showed defendants guilty of negligence, and further, that if the evidence showed any negligence by defendants, that the negligence of Jonas Miller contributed thereto, and at the same time the following colloquy took place:

DEFENDANTS' COUNSEL: "I would like to have you repeat your statement that you frankly don't know what caused the fire.

PLAINTIFFS' COUNSEL: "I think that is in the evidence. They both said they didn't see it start, and they didn't know, so it is in there now, for you."

Thereupon the trial court overruled the demurrer and the trial proceeded, with the result above indicated.

In due course defendants appealed to this court.

By reason of appellees' frank admission at the trial that plaintiffs did not know the cause of the fire and their admission to the same effect in their brief, we shall first examine the reasons urged by them to support the trial court's ruling on the demurrer to their evidence.

It may be first observed there is no contention the doctrine of *res ipsa loquitur* applies, possibly because the evidence shows that when the fire started both the deceased, Jonas Miller, and the servant, Crawford, were jointly engaged in putting gasoline into a barrel, and therefore the particular thing which caused the accident was not under the exclusive control of the defendants (see 45 C. J. 1214) or because the surrounding circumstances were not such as to leave no reasonable conclusion to be drawn therefrom other than that the fire started because of the defendants' negligence. (*Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599.)

Appellees concede it was their duty to establish the defendants' negligence and they contend it was shown; that gasoline is a dangerous substance because of its inflammable character, peril lying in the manner in which it is handled (*Reece v. Wrightsman*, 142 Kan. 262, 46 P. 2d 620) ; that defendant was negligent in having more gasoline in its truck than it could unload in Miller's storage tank, in attempting to put the gasoline into a receiving tank which lacked capacity, in overflowing the underground tank, thereby spilling quantities of gasoline over the ground around the tank, and in unloading the gasoline into an underground tank and reloading the same. It is argued that each of these alone would tend to create a fire, and coupled together, the resulting fire appeared not only foreseeable, but almost inevitable. In support of the argument but one authority is cited, *State Highway Comm. v. Empire Oil & Ref. Co.*, 141 Kan. 161, 40 P. 2d 355. Reference to that case will show the action was not based on negligence, but on a violation of a statute making it unlawful for any person to permit oil and other matter to escape, as denounced in R. S. 55-121, now appearing as G. S. 1935, 55-121. That case is no authority to support a contention that one guilty of negligent conduct is responsible for damage without a showing the injuries received by another were proximately caused by such negligence.

The method of handling the gasoline, insofar as having too big a load, etc., can hardly be said to be the proximate cause; for if the truck had then moved out of the station and on its way, nothing that thereafter happened could be attached to the overload. The spilling of the gasoline on the ground, either because the underground tank overflowed—and there is no direct evidence that it did—or because in the operation of filling the underground tank gasoline was spilled from the hose on the truck, was negligent handling of the

product. Under the evidence, that occurred about twenty minutes before the fire. The day was hot and the inference is that this caused the fumes from the gasoline to accumulate rapidly. It might also be inferred, but is not, that the heat would cause the evaporation to be rapid, and the wet place around the tank which Dallas Miller saw sometime before the accident had dried when the barrels were being filled. However that might be, the fire occurred apparently after one barrel had been filled, for it was found undisturbed, and while the second was being filled, for it had the end blown out of it. While negligence may be proved by circumstantial evidence (*Brown v. Clark*, 152 Kan. 274, 103 P. 2d 907), the circumstances must point directly to negligence of the defendant, they must go further than to be merely consistent with negligence. In *Hendren v. Snyder*, 143 Kan. 34, 53 P. 2d 472, the action was to recover damages by a pedestrian on a highway from the defendant driver of a car who allegedly negligently struck him. It was there said:

"It is familiar law that negligence is never presumed; it must be established by proof. Like any other fact, it may be established by circumstantial evidence. (*Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599.) But the circumstances 'relied on must be of such a nature and so related one to the other that the only reasonable conclusion to be drawn therefrom is the theory sought to be established.' (*Cornwell v. O'Connor*, 134 Kan. 269, 271, 5 P. 2d 861.) 'A fact is not proven by circumstances which are merely consistent with its existence.' (*Canestro v. Joplin-Pittsburg Rld. Co.*, 135 Kan. 337, 341, 10 P. 2d 902.)

"In *Whiteker v. Wichita Rld. & Light Co.*, 125 Kan. 683, 265 Pac. 1103, it was held: 'A finding of negligence cannot rest on mere conjecture, but must be established by competent proof.' (Syl. ¶ 1.)

"See, also, *Beeler v. Railway Co.*, 107 Kan. 522, 192 Pac. 741; *Norman v. Railway Co.*, 101 Kan. 678, 168 Pac. 830, and *A. T. & S. F. Rly. Co. v. Toops*, 281 U. S. 351, reversing *Toops v. Atchison, T. & S. F. Rly. Co.*, 128 Kan. 189, 277 Pac. 57." (l. c. 41.)

The rule stated in that case has been repeatedly approved in subsequent cases, among them being *Crowe v. Moore*, 144 Kan. 794, 797, 62 P. 2d 846; *Hogan v. Santa Fe Trail Transportation Co.*, 148 Kan. 720, 727, 85 P. 2d 28; and *Hurla v. Capper Publications, Inc.*, 149 Kan. 369, 379, 87 P. 2d 552.

It is obvious that the mere spilling of gasoline did not cause the fire. Some other thing had to occur. There is no proof the gasoline would ignite spontaneously and there is no contention that it did. There was no proof whatever by plaintiff as to what caused the fire, much less any that it was any intervening act of the defendants.

The result is that plaintiff's evidence left it entirely to conjecture and surmise what the cause of the fire was, and that it occurred by reason of the negligence of the defendants. The demurrer should have been sustained.

By reason of our conclusion we need not discuss whether the jury was warranted in not accepting as true the testimony of the defendants as to how the fire started, nor whether their answer to a special question that there was insufficient evidence to show it was caused by Miller's striking a match, should be set aside as contrary to the evidence.

The judgment of the trial court is reversed and set aside and the cause remanded with instructions to sustain the demurrer and render judgment for defendants.