No. 37,244

JACK A. WILLS, *Appellee*, v. LEHIGH PORTLAND CEMENT COMPANY, *Appellant*.

(195 P. 2d 574)

Opinion filed July 10, 1948.

*Howard M. Immel,* of Iola, argued the cause, and *Frederick G. Apt* and *Mitchell H. Bushey,* both of Iola, were with him on the briefs for the appellant.

*Kenneth H. Foust,* of Iola, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by the defendant Lehigh Portland Cement Company, a corporation, in an action to recover damages for personal injuries sustained by the plaintiff while working for defendant as an independent contractor.

The jury was unable to agree on a verdict. Defendant has appealed from the orders overruling its demurrer to plaintiff's amended petition and its demurrer to plaintiff's evidence.

The written contract under which appellee was employed was attached to his amended petition and was later adduced in evidence. We prefer to go directly to the second alleged error. The contract was dated March 19, 1947, but performance of the work was commenced in May, 1947. Under the terms of the contract appellee agreed to paint three cooler stacks at appellant's cement plant after cleaning the surface for the paint job. Appellant furnished only the paint. Appellee owned and furnished all tools, equipment, rigging and ropes necessary for the job. It was specialized work. He worked on the job as weather permitted and entirely according to his own plans and methods. Appellant had

no supervision or control over the work. The parties agree appellee was an independent contractor. The contract, in part, provided:

"The first party agrees that he is an independent contractor, and in accepting this contract, and as a part of the consideration thereof, it is hereby specifically understood and agreed that in doing said work and in compliance of the contract that the Lehigh Portland Cement Company shall not in any way become liable to the said contractor, his agents, servants or employees for any damage to them or injury received by them in the doing of said work, either directly or indirectly or otherwise, or by reason of being upon or in the property of the Lehigh Portland Cement Company, it being specifically understood and agreed that in the performance of said work as an independent contractor, that the said first party is acting thereunder as an independent contractor and not as the agent, servant, employee or workman of said Lehigh Portland Cement Company; and that the said first party will save harmless the Lehigh Portland Cement Company from any and all liability thereunder."

The cooler stacks were sixty-five feet high. Appellee had finished the outside of the stack at which the accident occurred and was working on the inside shortly before the accident. The stack rested on a base which was approximately thirty feet high. Appellee fell a distance of about fifteen feet while descending on the outside of the stack by means of his rope. As he descended the rope came apart and he landed on the cement platform of the base severely injuring both feet and his left ankle. While working on the inside of the stack appellee let his ropes down to the bottom of the stack on the inside. He claimed the ropes were burned with hot clinkers. The accident occurred on Saturday, May 3. He had worked on the inside of the stack on the preceding day. He had done this same kind of work for appellant on previous occasions.

Other evidence adduced on appellee's direct examination, in substance, was:

He had been a steeplejack all his life and was sixty-four years of age; he painted smokestacks, flag poles, church crosses, water tanks and objects of that character which an ordinary man cannot reach with a ladder; a man in his profession is equipped for each purpose, carrying different lines of tools required for different jobs; on the instant job it was necessary to use a rope with block and tackle; he did not start this work sooner because of the rainy season; he started to work on the inside of the stack on May 1; on May 2 he had cleaned the stack on which he was then working about half-way down on the inside; he worked from the top down; it got so dusty and dirty he came back out and stopped for the day; on Saturday, May 3, the day he was injured, he pulled himself to the

top of the stack and dropped his rope back into the stack in order to proceed with the inside work; he remained there about an hour and a half and came back to the top; he had about 300 feet of rope altogether, all of which, except about sixty-five feet, was below him; the rope had been used some but it was still usable; there were no burned places on it on Saturday morning; he was working on the inside about halfway down the stack when it again became so dusty he came up for air; when he reached the top some man at the bottom gave him some sort of signal which he interpreted to mean that something was wrong and he stopped work; he stayed on top of the stack until the man came back and showed him some rope; he (appellee) knew his rope had burned; when he found his rope had burned he descended on the outside of the stack, when he reached the end of the rope he had a man tie some more rope to the burned end; he then started coming down and descended two or three feet when something broke; he did not know whether the knot had become untied or whether some of the rope had broken; he was about even with the man's head when it happened; he could not say whether the rope broke or the knot had come untied; the rope was not burned when he went into the stack on the day of the accident; he did not see the rope after he got to the ground; insofar as he knew the rope was still hanging on the stack.

On cross-examination appellee, in substance, testified:

The work of a steeplejack is a special profession; there are few people in the trade; he was considered about as good at the work as anyone; he had cleaned and painted defendant's cooler stacks two or three times before; in doing the work he used special rigging, which equipment he owned, and he had complete charge of the work; he was his own boss, determined when he would work, whether the weather was fit, and he went to work and quit when he deemed it advisable; he was thoroughly familiar with these stacks; the stacks were cool; he put the rigging up about March 18 or 19 and left it there until he started work on May 1; he knew what the McCaslin conveyer was; he had seen it before; it is a conveyer that is filled with red hot clinkers and is always hot; he could see the condition of the stack and knew its condition the day he was injured; the stack was cold when he went into it; he dropped his ropes down the inside of the stack; he could not see the bottom; the McCaslin conveyer does not go into the stack; he did not know whether there were any hot clinkers at the bottom of the stack but his ropes

were burned; after learning that his ropes had been burned he re-arranged the rope from four strands to three strands; by doing that it decreased the strands which held his weight but gave him more rope length; when he rearranged the rope one piece of the burned rope passed through his hands; he examined it; it was burned off at the end; he was safe on the top of the stack; his re-strung rope on which he started down was of sufficient length to reach twenty feet from the ground; he intended to have a man tie a piece of rope at that place and to let the knot go to the top of the pulley which would give him twenty feet more rope so he could reach the ground; the man tied the rope; the knot passed through his (appellee's) hands; he could not say whether the knot came untied or whether the rope broke; above the knot the rope was in good shape and let him down; in determining whether he would leave the place of safety at the top of the stack and come down by the method indi-cated he exercised his own judgment; he did not ask anyone to put a pole or ladder to the top of the stack; he didn't think of that at the time; he knew part of his rope was burned; he got down within twenty feet of the platform; he had asked no one to help him down from there but he did ask a man to tie on a piece of rope; the man tied it on at his direction; the Lehigh had nothing to do with that.

On redirect examination appellee testified, in substance, he talked with Stanley Lee of the cement company. Lee knew he was going to work on this particular stack and told him it was all right.

On recross-examination appellee, in substance, testified he did not talk with Stanley Lee the day of the accident but a day or two before and Lee then told him the stack was cold; the stacks could have been cool and were cold but he could not say what was at the bottom of the stack after he got to the top; he could have seen what was in the bottom of the stack from the outside; he took it for granted the condition was the same as on Friday; he did not work on Saturday morning; he assumed if the ropes had not burned on Friday they weren't going to burn on Saturday.

It is conceded Stanley Lee was appellant's foreman.

The attorney for appellee, in substance, testified: He went to appellant's plant at the request of appellee and with appellant's permission; he procured a portion of the rope which was found at the stack in question; exhibit 1 was a portion of the rope; he cut the exhibit from a portion of the rope that was there; one end of the rope was cut and the other end was just as he found it; the

rope had been hooked to the top of the stack and had then been dropped to the bottom of the stack; he did this the day the lawsuit was filed.

The action was filed December 11, 1947.

Appellant insists first, appellee by express agreement relieved it of all liability for injuries caused directly or indirectly and, second, appellee was an independent contractor and his own evidence fails to establish a right to recover in any event. Appellee argues the contract contravenes public policy and is void. Appellant disagrees. We need not determine that controversy.

In view of the record we think that irrespective of the contract appellee cannot recover in this action. Appellee made no inspection of the stack on Saturday morning before starting to work. Appellee admits an inspection from the outside would have disclosed whether the stack was hot or cold. Ignoring those particular circumstances entirely, however, it is nevertheless conceded appellee was in a place of entire safety after he learned his rope had been burned. He, therefore, was not injured at a time when he was ignorant of that fact. No willful or wanton negligence of appellant was alleged or established. If the act of burning the rope constituted the kind of negligence which, in view of the relationship of the parties, would subject appellant to liability, it is admitted the negligence was known to appellee prior to his injury. Appellee had opportunity to inspect all the rope and did inspect at least part of it before using it. Under these circumstances appellant cannot be charged with appellee's failure to properly inspect the rope or with negligence in appellee's exercise of his own judgment and conclusion the rope remained adequate for descending purposes or with negligence in later tying the knot.

Had appellee requested that appellant provide a safe descent and had appellant refused such request, a wholly different question might be presented. An entirely different question also would have been involved had appellant voluntarily but negligently undertaken to provide the means of descent which resulted in injury. Appellee, not appellant, undertook to direct, and did direct, that another person tie a piece of rope to the rope on which appellee was descending. Appellee admits appellant had nothing whatever to do with that decision or order. Appellee cites no authorities and we are aware of none which make appellant's conduct, under the circumstances existing here, the proximate, or legal, cause of the injury.

Appellee frankly admits he did not know, and it remains wholly undetermined, whether the rope broke due to its burned condition or came apart because the knot was insecurely tied. The legal cause of the injury, therefore, remains wholly speculative.

Judgments cannot be permitted to rest on mere conjecture and speculation. Although negligence may be established by circumstantial evidence such evidence must point directly to the negligence of the defendant. It is not sufficient that such evidence be merely consistent with his negligence. (*Hendren v. Snyder,* 143 Kan. 34, 53 P. 2d 472.) This rule has been repeatedly approved in our subsequent decisions. A few of them are *Crowe v. Moore,* 144 Kan. 7.94, 62 P. 2d 846; *Hogan v. Santa Fe Trail Transportation Co.,* 148 Kan. 720, 85 P. 2d 28; *Hurla v. Capper Publications, Inc.,* 149 Kan. 369, 87 P. 2d 552; *Miller v. Gabbert,* 154 Kan. 260, 118 P. 2d 523, and cases therein cited; *Bessette v. Ernsting,* 155 Kan. 540, 127 P. 2d 438.

The demurrer to appellee's evidence should have been sustained. The cause is remanded with directions to enter judgment for appellant.

HARVEY, C. J., concurs in the result.