No. 38,846

In the Matter of the Estate of Franklin B. Hayden, Deceased. (WILLIAM B. HAYDEN, Administrator, *Appellant,* v. DOROTHY M. BOYLE, *Appellee.*)

(254 P. 2d 813)

Opinion filed March 7, 1953.

*Thomas H. Taggart,* of Goodland, argued the cause, and *Terry Relihan, T. D. Relihan,* and *A. W. Relihan,* all of Smith Center, were with him on the briefs for the appellant.

*Max Jones,* of Goodland, argued the cause, and *Chas. G. Dockhorn,* of Goodland, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This is an appeal from a judgment rendered against the personal representative of a decedent's estate in an action brought by a widow on behalf of herself and four minor children for the wrongful death of her husband, resulting from the crash of an airplane.

Reference to the pleadings on which the case was tried in district court is necessary only because they define the issues on which the case was tried. For all purposes essential to appellate review it may be said:

The petition charges that on March 22, 1951, the plaintiff's husband, Wallace E. Boyle, was riding as a passenger in an airplane which was owned and being flown by Franklin B. Hayden in such a negligent manner it crashed and Boyle was killed; that the negligence of Hayden in the operation of the airplane consisted of flying the machine (*a*) contrary to the accepted rules of safety for flying; (*b*) at a low and dangerous altitude in disregard to his own safety and the safety of his passengers; and (*c*) so that it made turns, loops, stalls, and dives at an extremely low altitude which could not have been made with safety and were made with disregard to the safety of himself and his passengers; and that acts of negligence on the part of Hayden were the direct and proximate cause of the crashing of the airplane and the death of plaintiff's husband.

Except for an admission Boyle met his death on the date charged the answer of William B. Hayden, as Administrator of the estate of Franklin B. Hayden, who lost his life in the same airplane accident, denied each and all of the foregoing charges as set forth in the petition.

At this point it should perhaps be stated the record discloses a separate answer on the part of William B. Hayden as an individual, the allegations of which are of little consequence and have no bearing on the issues as joined and the case as tried in the district court. For that reason, although we note he joined in giving notice of an appeal from the judgment, we shall proceed with this opinion without further reference to him as an individual and as if he had made no appearance in the action.

With issues joined as above related and after the disposition of certain legal questions at a pretrial conference, which are of no importance at the moment, the cause came on for trial by a jury.

Following the introduction of plaintiff's evidence the defendant demurred thereto and moved the court to dismiss the claim and disallow the same on grounds that the evidence introduced on behalf of the plaintiff was insufficient in law to establish a right to the allowance of her claim and affirmatively showed that she had no claim as against the administrator. This demurrer was overruled by the trial court on the ground it was of the opinion the record disclosed sufficient evidence to go to the jury. Thereafter the defendant adduced his evidence in defense of the claim and the plaintiff offered certain rebuttal testimony. Thereupon, after instructions on the applicable law, the cause was submitted to the jury which, in due time, returned its general verdict in favor of the plaintiff along with its answers to certain special questions submitted by the court at the time it retired to consider its verdict. Subsequently the defendant's motion to set aside the findings of the jury *non obstante veredicto,* to set aside certain findings, and for a new trial were each overruled. The trial court then approved the general verdict and rendered judgment accordingly. The appeal is from the judgment and from each and every ruling, order, and decision made or rendered by the trial court in the case adverse to the defendant during the pendency and trial of the action and subsequent thereto.

Appellant's specifications of error are numerous and quite lengthy. We will first consider and dispose of her claim the trial court erred in overruling the demurrer to the evidence. In doing so we shall give full application to the established rule (See numerous cases cited in West's Kansas Digest, Trial, § 156, Appeal & Error, §§ 866[2], 997[2]; Hatcher's Kansas Digest [Rev. Ed], Trial, §§ 147 to 151 Incl., Appeal & Error, § 488) that in the determination of such question all facts proved by her must be accepted as true and given the benefit of all favorable inferences to be reasonably drawn therefrom, also keep in mind the trial court's ruling on the demurrer should be sustained unless, after reviewing all her evidence in the light of the rule, we are required to say she has nevertheless failed to establish some one or more of the material facts of her case (*Greep v. Bruns,* 160 Kan. 48, 159 P. 2d 803; *Rowan v. Rosenthal,* 113 Kan. 604, 215 Pac. 1008).

Except for testimony relating to the responsibility for the accident the factual picture disclosed by the evidence is not a subject of dispute between the parties and can be stated thus:

Just prior to noon on March 22, 1951, Franklin B. Hayden, Ray Callahan, and Wallace E. Boyle, all local residents, entered an airplane owned by Hayden and took off from the Goodland, Kansas, airport for an air flight, the purpose of which is not disclosed by the record.

The airplane was a 4-passenger Bellanca, the front seat holding two passengers and the rear seat equipped for two. It was also equipped with dual controls, permitting its operation by either of two persons who happened to be seated in the front seat and with a trim tab control, used in controlling the operation of the elevators which in turn control the up and down or ascent and descent operation of an airplane. This last control arrangement was located on the ceiling of the plane, in the middle between the two seats and a little behind the pilot, and was accessible to and could be operated by any persons seated therein. Although such airplane had dual controls and could be flown in the air by either pilot independently of the other it could not be taken off or landed by the pilot seated in the right front seat without help from the pilot seated in the left front seat because the plane was not equipped with a steerable tail wheel, which required use of the brakes on those maneuvers, and there were no brake pedals on the right hand side of the cockpit.

At the moment of the take-off Hayden, who had several hundred hours' flying time, was seated in the left front seat of the airplane. Callahan, who was a truck driver with about a hundred hours' flying time and had soloed, was seated in the right front seat. Boyle, who was a maintenance technician for the Civil Aeronautics Administration with a small amount of flight time and was not a licensed pilot, was sitting in the rear seat. None of the persons thus seated could have changed seats while the plane was in the air.

After taking off from the airport to the southwest in what appears to have been the normal take-off under existing conditions the airplane made a ninety degree left turn and then proceeded in a southeasterly direction for an estimated ten minutes when it crashed to the ground, causing the death of all three of its occupants. There was but one eye witness to the accident and he was too far away to identify or observe the activities of the persons involved in the tragedy. However, it may be said there is ample evidence of record to establish their positions in the plane at the moment of the crash were the same as they had been at the start of the flight.

The parties do not agree on, and have failed to furnish a record

sufficient to enable us to determine, the exact distance between the place where the airplane took off and the scene of the crash. On that account all that can be said on such point is that the accident occurred at a point somewhere between three and three-fourths miles (as appellee contends) and four and one-half miles (as appellant insists) from the airport, some two and one-half miles south of the City of Goodland.

Early in this opinion we referred to certain legal questions, disposed of by the trial court at a pretrial conference. One of such questions was that the cause should be tried and governed by the rules of law and evidence applicable in ordinary negligence actions. In an obvious attempt to fortify his position the demurrer to appellee's evidence should have been sustained and in conjunction with arguments advanced in support thereof appellant contends that contrary to the trial court's decision a passenger in an airplane comes within the provisions of G. S. 1949, 8-122b, enacted by the legislature in 1931, and commonly known as the guest statute, which reads:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

There can be no question regarding the general rule applicable in a case such as is here involved. It is that in the absence of a statute covering the operation and management of airplanes at the time and place of an accident, specifically applicable to the issue of negligence in the operation thereof, the rules of law applicable to torts—the ordinary rules of negligence and due care—obtain. (See 6 Am. Jur., Aviation, 16 § 23; 6 Am. Jur. [Revised], Aviation, 36 § 60; 12 A. L. R. [2nd Ed], Anno, 660 § 3; 99 A. L. R. Anno, 194 § X; 69 A. L. R. Anno, 328 § X.)

It may be stated the question of liability to a guest in an aircraft has been treated in very few cases. With specific reference to our own guest statute it is to be noted that Chapter 81, Laws of 1929, now G. S. 1949, 8-126, in force and effect two years prior to the enactment of 8-122b, *supra*, relating to the regulation of motor vehicles defines a "motor vehicle" as "every vehicle, as herein defined, which is self-propelled" and a "vehicle" as "every device in, upon or by which any person or property is or may be transported or drawn upon a *public highway*" (emphasis supplied),

also that Chapter 283, Laws of 1937, now Chapter 8, Art. 5 of
G. S. 1949, the uniform act regulating traffic on highways, enacted
some six years after the effective date of the guest statute, defines
a "vehicle" as "every device in, upon, or by which any person or
property is or may be transported or drawn upon *a highway,*
(emphasis supplied) except devices moved by human power or
used exclusively upon stationary rails or tracks" and a "motor ve-
hicle" as "every vehicle which is self-propelled and every vehicle
which is propelled by electric power obtained from overhead trolley
wires, but not operated upon rails." We note further that the
case of *Hanson, Adm. v. Lewis, Adm.,* reported in 5 Ohio Supp.
195, 1 Avi 730, and U. S. AvR (1938) 73, involving a similar statute
and a like contention, holds that an airplane is not a motor vehicle
within the meaning of the Ohio guest statute.

In the face of the foregoing definitions and the reasoning to
be found in the opinion of the decision last cited, to which we sub-
scribe, we have little difficulty in concluding that our own guest
statute applies only to persons who are transported by owners
or operators of motor vehicles, as their guests, on the highways
of the state; that it has no application to guests while riding in air-
planes, and that the trial court did not err in so holding.

The conclusion just announced finds support in *McBoyle v.
United States,* 283 U. S. 25, 75 L. Ed. 816, 51 S. Ct. 340, holding
that the meaning of the word "vehicle" in the phrase "any other
self-propelled vehicle not designed for running on rails" as used in
the National Motor Vehicle Theft Act was intended to have appli-
cation to a vehicle that runs, not something, not commonly called
a vehicle, that flies, i. e., an airplane. For decisions of like import
construing other statutes and regulations see 165 A. L. R. Anno, 916.

At this point, although in a sense elementary, it may as well be
stated that two elements are absolutely essential to recovery in
every negligence action, each of which must be established by
the degree of proof required by our decisions. One of these
prerequisites is existence of the acts of negligence relied on and
the other that the person charged with their commission actually
committed them.

There are, of course, certain fundamental principles of law ap-
plicable to negligence actions generally. Most of the legal princi-
ples having application, under circumstances such as exist in the

case at bar, are correlated and succinctly set forth in *Snyder v. McDowell,* 166 Kan. 624, 203 P. 2d 225, where it is said:

". . . Although the question has been presented under varying circumstances this court has repeatedly held that the mere fact that there was an accident or other event and someone was injured is not of itself sufficient to predicate liability; that negligence is never presumed, but must be established by proof; that like any other fact, negligence may be proved by circumstantial evidence, but the circumstances relied on must be of such nature and so related one to the other that the only reasonable conclusion to be drawn is the theory sought to be established; that a fact is not proven by circumstances merely consistent with its existence, and that a finding of negligence must be established by competent proof and cannot rest on mere conjecture. See *Hendren v. Snyder,* 143 Kan. 34, 41, 53 P. 2d 472; *Crowe v. Moore,* 144 Kan. 794, 797, 62 P. 2d 846; *Miller v. Gabbert,* 154 Kan. 260, 266, 118 P. 2d 523; *Starks Food Markets, Inc., v. ElDorado Refining Co.,* 156 Kan. 577, 134 P. 2d 1102; *Kokenge v. Holthaus,* 165 Kan. 300, 309, 194 P. 2d 482; and *Wills v. Lehigh Portland Cement Co.,* 165 Kan. 546, 195 P. 2d 574, and the cases cited in the above." (pp 626 and 627.)

For one of our more recent decisions wherein the foregoing principles, although stated in different form, are recognized and applied see *In re Estate of Modlin,* 172 Kan. 428, 435, 241 P. 2d 692, and the numerous cases there cited.

No useful purpose would be served and we are not disposed to detail the evidence tending to support the first of the two essential elements of appellee's cause of action to which we have heretofore referred. It suffices to say there was evidence on the part of experts and others which, if believed, is sufficient to warrant a conclusion the airplane was being operated in violation of well established and accepted rules for safe flying and that the negligence of someone, as charged in the petition, was the cause of the crash in which all three of the occupants of the airplane met their death.

Our conclusion respecting the first essential element of appellee's cause of action does not mean the demurrer was properly overruled. The question whether there was evidence sufficient to go to the jury on the second and equally vital element to which we have heretofore referred remains. This requires a further review of the record. It may, we believe, be fairly assumed that appellee has set forth in her brief the evidence on which she relies to sustain her position Hayden was operating the airplane at the time of the crash, and hence responsible for its negligent operation, in its most favorable light. Therefore, rather than to burden this opinion

with all details of the testimony, we shall quote salient excerpts from her brief which fully disclose her position on that point, even though some factual statements contained therein may be repetitious and other statements, in the form of conclusions, as to the force and effect to be given the evidence relied on must be disregarded. They read:

"The witnesses Follett and Edwards testified that the plane could not be taken off or landed from the right-hand side of the cockpit, and the witnesses Martin (Nelson) and Follett testified that Hayden was at the controls on the left-hand side of the cockpit when he took off. The evidence of Kreutzer, who removed the bodies from the plane, showed that Hayden was still strapped to his seat with the safety strap unbroken, which would indicate that he had his hands on the control wheels, and used them as a lever, or brace, while the safety strap of the passenger on the right-hand side of the cockpit was broken. The wheel on the left-hand control, as shown by Plaintiff's Exhibit 6, was pulled off, and the column controlling the wheel was bent upward, all of which indicated that the plane was being driven from the left-hand side at the time of the crash, and that great pressure was exerted by the driver in the left-hand seat to pull the plane out of the stall. Witness Follett testified that in emergencies he had reacted in the same manner, and had pulled up and out on the control wheel."

"The question of whether or not Hayden was at the controls, and responsible for the movements of the plane, is not without supporting evidence. Hayden was at the controls at the time of the takeoff, and the plane could not have been taken off from the right-hand position. The position of Hayden and Callahan did not change during the course of the flight."

"Furthermore, the fact that Hayden had performed these maneuvers, and was ruled off the Kanorado Airport, was additional evidence to go to the jury that Hayden was at the controls of the plane."

"The circumstantial evidence which was introduced pointed directly to the acts of Hayden. Only Hayden, sitting in the left front seat, could have broken and pulled up on the control wheel. The fact that Callahan's safety belt was broken showed that he did not have hold of his control wheel, and there was no damage to the right control wheel. The fact that the plane is ordinarily flown from the left side—that only the left side was equipped with brakes, and the fact that Hayden had, on many previous flights, flown his plane in a reckless manner, was all sufficient circumstantial evidence that Hayden was flying the plane when it crashed. . . ."

So far as our own reports are concerned the instant case is one of first impression. True, we have been called upon to review negligence actions based upon automobile accidents where there were no eye witnesses or survivors but never on one where an airplane was involved. Moreover we are cited to and our own research discloses no decisions involving automobile accidents where the question as to who was driving the vehicle was a vital and decisive factor.

Thus it appears that in disposing of the question now under consideration our decisions relating to liability in automobile accident cases are of little weight as precedents.

In support of her claim, the evidence on which she relies is sufficient to establish that Hayden was operating the airplane, appellee directs our attention to two decisions from foreign jurisdictions, the first being *Bruce v. Flying Service*, 231 N. C. 181, 56 S. E. 2d 560, 12 A. L. R. 2d 647, 2 Avi. 15,075. That was a case against a flying service corporation which had staged an air show to dedicate its new airport and demonstrate precision spins. In the presence of the president of the company and the manager of the show, the plaintiff's intestate requested and was granted leave by one of the pilots in the employ of the defendant and in complete charge of a plane engaged in the maneuvers to accompany the pilot. During one of the spins the plane crashed and its two occupants were killed. Thereafter plaintiff brought an action against the flying service corporation and, on issues joined respecting negligence of the pilot and the contributory negligence of the passenger, the court held that evidence showing the pilot was in the forward seat and in official charge of the operations of the plane equipped with dual controls, *and that once he had set the controls for a spin it would be difficult for the passenger to wrest control from him,* was sufficient for an inference, precluding a claim of contributory negligence, that the pilot continued operation of the plane during the maneuvers. The court further held that, although the passenger sat in the dual control seat *while the pilot was demonstrating a control spin,* the fact experts testified *the former should not attempt to control the airplane, and that any interference with the controls would not be successful,* was sufficient to uphold a verdict of no contributory negligence. Reference to the emphasized portions of the foregoing statement immediately disclosed there was far more evidence in the case just cited than in the case at bar. Therefore such case is clearly distinguishable and cannot be regarded as sustaining appellee's position. The same holds true of the second decision relied on by appellee which is *Schumacher, Admr. v. Swartz, Exec.,* reported in 68 Pa. D&C 3(1948), 2 Avi. 15,006. It holds that the action of a jury in determining that the owner of a plane was in exclusive control thereof at the time of an accident will not be disturbed, where the owner was an experienced aviator, seated in the front seat of a dual control plane, *the passenger being a comparative novice, where the passen-*

*ger's hands were not on the controls at the time the plane left the ground, where the pattern of flight pursued by the plane from the time it left the ground until the occurrence of the accident was typical of the owner's operation and completely different from that of the passenger, and where the owner's agreement with the air field prevented his giving instruction.*

There are two phases to appellant's claim the demurrer to the evidence should have been sustained. The first, that there was no proof of negligence whatsoever on the part of any one, has been decided adversely to his contentions. We therefore turn to the second, which is based upon the premise there was no proof as to who was operating the airplane, hence the evidence was insufficient to hold him liable for negligence even though the plane was being negligently operated. He cites four decisions from other jurisdictions in support of this position. When examined these decisions appear to be closer in point and entitled to more weight than those cited by appellee. We shall not attempt to relate the factual situations disclosed by the respective opinions but will summarize as briefly as possible the holding of the court in each of them.

In *Madyck v. Shelley,* 283 Mich. 396, 278 N. W. 110, 1 Avi. 748, the court held that where both occupants of an airplane which had dual controls permitting operation from either cockpit were experienced fliers, and the dual controls were connected after the crash in which both occupants were killed, evidence that the occupant of the front cockpit had the sole right to fly the plane, and that he was part owner thereof was insufficient to establish that he was the pilot of the plane at the time of the crash or to justify recovery against his special administratrix in an action for wrongful death of the other occupant. It also held that in an action for wrongful death sustained when the airplane crashed killing both occupants, either of whom might have been operating the plane equipped with dual controls, plaintiff had the burden of establishing that defendant's decedent rather than plaintiff's decedent was the pilot of the plane.

*Towle v. Phillips,* 180 Tenn. 121, 172 S. W. 2d. 806, 1 Avi. 1086, is a case where, in an action for the death of an airplane passenger who had access to one of the dual controls of an airplane which climbed vertically from a low altitude before crashing and killing the pilot and passenger, the court held the evidence was insufficient to take the question of pilot's negligence to the jury and in the opinion said:

"No doubt the vertical climb was the proximate cause of the crash. On the record before us it may have been caused by Webb's handling of the controls available to him, or by Towle's handling of the controls available to him, or it may have been caused by something not explained, for which neither man was responsible. It would be a guess to say that Webb's negligence was the responsible agency." (p. 126.)

In *Budgett v. Soo Sky Ways, Inc.*, 64 S. D. 243, 266 N. W. 253, 1 Avi. 612, the facts are quite similar. The trial court permitted the case to go to a jury after overruling a motion for a directed verdict. After a verdict for the plaintiff the defendant moved for judgment *non obstante veredicto,* which was granted. In affirming the judgment the court said:

"Lastly, appellant invokes the doctrine of res ipsa loquitor, which, as applied to this case, means that the state of the evidence and the surrounding circumstances were such that the accident could not have happened except through negligence on the part of the pilot. *Barger v. Chelpon,* 60 S. D. 66, 243 N. W. 97. But that doctrine cannot be applied in this case, because there is no more probability that the accident was caused by negligence on the part of the defendant than on the part of Budgett or Schmidt. In other words, plaintiff has failed to sustain the burden of proof and cannot recover." (pp. 245, 246.)

*Hall v. Payne,* 189 Va. 140, 52 S. E. 2d 76, 2 Avi. 14,845, is a case where the pilot of an airplane invited the plaintiff's thirteen year old son for a ride in a two seated aircraft with dual controls. During the course of the flight the plane crashed and both occupants were killed. Plaintiff sued the pilot's estate to recover damages claiming that his negligence was the proximate cause of the accident. The trial court permitted the case to go to a jury and a verdict was returned in favor of the plaintiff. Thereafter on motion of the defendant the verdict was set aside and judgment rendered for the defendant, the trial court stating the probable causes of the crash could be catalogued and would be many, if the field of conjecture and speculation were entered, but that the cause of the crash had not been proved and no negligence of the pilot had been shown which was the proximate cause of the accident. The supreme court affirmed the judgment, holding that to prove a possibility only, or to leave the issue to surmise or conjecture, is never sufficient to sustain a verdict. It is true the main question in this case was whether there was sufficient evidence of negligence on the part of the pilot rather than his identity. Nevertheless the rule announced by the court applies with equal force to a situation where the question of who was operating a plane is the decisive issue.

Our somewhat extended research of the authorities has disclosed two decisions, not cited by appellant but nevertheless entitled to weight as supporting his position.

*Morrison v. LeTourneau Co. of Georgia,* 138 Fed. 2d 339, 1 Avi. 1114, is another case involving the crash of a two seated, dual controlled, plane which fell and killed its pilot LeTourneau and Morrison a passenger. The action was against the LeTourneau Company, the lessee, and another corporation, as the owner and lessor of the fallen plane, and based on negligent operation of such plane by the pilot LeTourneau. In holding the proof of negligence as to either defendant was too indefinite and inadequate the court said that no one could answer a number of stated questions as to what or who caused the crash, including "Did Morrison get excited and grab the controls?" and observed that theories could doubtless be further multiplied as to how the accident occurred, but each must have as its basis only speculation and conjecture.

*Michigan Aero Club v. Shelley,* 283 Mich. 401, 278 N. W. 121, 1 Avi. 750, holds that the plaintiff's airplane club could not recover from the administrator of a deceased airplane pilot for the destruction of its plane which crashed while it was being operated in violation of law and of club rules, in absence of proof that the pilot who obtained the airplane on which dual controls were connected immediately prior to flight during which the airplane crashed was negligently operating the plane at the time, and that the plane was not being operated at the time of such crash by a passenger in the rear cockpit, who had an amateur pilot's license.

After careful analysis of the decisions to which we have last referred we are inclined to the view that what is there said and held, as applied to the confronting facts and circumstances, requires a conclusion the appellee's evidence failed to establish who—as she was required to do—was operating the plane at the time of the involved accident. However, we do not intend to rest our decision in this case entirely upon that premise.

We are not in accord with the appellee's view that when three acquaintances take off from an airport in an airplane, equipped for dual flying, the fact one of them was the owner of the plane and was seated in the left-hand or driver's seat at the time it took off from such airport or that he had been ruled off some other airport for negligent flying creates a presumption or warrants an inference that the owner continued to operate and was at the controls

of the plane at the time of a crash. Nor do we agree the fact there is evidence the plane could not be taken off or landed from the right-hand side or that after a crash the owner was found in the same seat he was in when the plane took off justifies any such conclusion. So far as the issue now under consideration is concerned it is clear from the evidence that control of the plane could have been shifted between Hayden and Callahan at will after the take-off, that the crash did not occur while landing or taking off, and that Hayden could not have changed his position after the flight started, hence he was bound to be in the same seat at the moment of the crash.

From what has been said it becomes apparent that if appellee's evidence was sufficient to withstand a demurrer it must be on the basis of the physical facts and circumstances observed by so-called expert witnesses after the crash occurred. Conceding that with respect to such matters they testified as the appellee contends the record discloses that all such witnesses, in some form or another, either admitted or made it clearly appear on cross-examination that notwithstanding what they had observed and their conclusions reached with respect thereto it would be impossible to say with certainty who was as the controls of the plane at the time of the crash. Such testimony must be given force and effect along with the other evidence. This we may add is so even though it was elicited on cross-examination. The liberal doctrine prevailing in this jurisdiction with respect to the sufficiency of evidence on demurrer is not to be extended to the point where it requires an obviously erroneous construction of the testimony of any witness.

With evidence as heretofore indicated nothing would be gained by prolonging this opinion. It suffices to say that after a careful and extended review of such evidence, giving it the benefit of every inference to which it may be entitled under our decisions, we are convinced that it merely discloses facts and circumstances consistent with appellee's theory Hayden was operating the involved airplane when the crash occurred and that in the final analysis, when all of it is accepted as true, any answer to the question as to who was at the controls of the plane at the moment of that regrettable tragedy must be predicated upon speculation, surmise or conjecture. Under our decisions, as indicated early in this opinion, judgments based upon that premise cannot stand. It necessarily follows, since an examination of the appellant's evidence fails to disclose any evi-

dence that would supply the vital defect in appellee's proof, that the cause should be remanded with directions to sustain the demurrer to the evidence and it is so ordered.

In view of the foregoing conclusion there is no occasion for discussion or disposition of other contentions advanced by appellant. The judgment is reversed.