No. 43,198

A. A. MICHAEL, *Appellant*, v. JOHN C. GROSS and FORREST E. SHORT, JR., *Appellees*

(381 P. 2d 369)

Opinion filed May 11, 1963.

*John L. Ibson,* of Fort Scott, argued the cause, and *Charles N. Briggs,* and *Kenneth L. Briggs,* both of Fort Scott, were with him on the briefs for the appellant.

*Forrest E. Short,* of Fort Scott, argued the cause *pro se,* and *Douglas G. Hudson,* of Fort Scott, argued the cause and *Douglas Hudson* and *Howard Hudson,* both of Fort Scott, were with them on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This was an action to set aside a real estate contract. The trial court sustained a demurrer to the plaintiff's evidence and the appeal is limited to that ruling.

On October 4, 1961, the plaintiff, A. A. Michael, of Fort Scott, a single man, then eighty years of age, entered into a contract with John C. Gross, also of Fort Scott, whereby Michael agreed to sell five hundred eighty-five acres of land to Gross for the principal sum of Thirty-five Thousand Dollars. Under the terms of the contract One Thousand Dollars of the principal was paid on the day of the execution of the agreement; Four Thousand Dollars was to be paid, and was paid, on December 29, 1961. The balance of the principal was to be paid in unequal installments, with the final payment to be made on January 29, 1963. Forrest E. Short, Jr., an attorney of Fort Scott, was named in the agreement as escrow agent with authority to receive and accept payments of principal for Michael and to hold the Warranty Deed, conveying the real estate, in his possession until Gross made final payment of the principal, whereupon he was to deliver such deed to Gross. The contract, although lengthy, is not an unusual one and, without burdening the record with further recital of its terms, may be said

to contain provisions which are normally sufficient to adequately protect the rights of parties executing agreements similar to the one here involved.

More than four months after executing the contract, *i. e.*, on February 9, 1962, Michael, as plaintiff commenced the instant action against Gross and Short, as defendants, by filing a petition in the district court of Bourbon County wherein he charged the defendants were guilty of fraud in the inception of the contract, warranting its cancellation, and asked that it be set aside and canceled on the basis of alleged fraudulent acts set forth in such pleading. Highly summarized those acts, as we glean them from the petition, are based upon the premise that, with full knowledge of both defendants, (1) Short, in inducing Michael to execute the contract betrayed a position of confidence and fraudulently cheated Michael as he pretended to represent him, while actually representing Gross; (2) Michael was mentally incompetent on October 4, 1961, when he entered into the contract with Gross; and (3) under the existing conditions the consideration fixed by the terms of the contract for the sale of the involved land was so inadequate as to constitute fraud, vitiating the agreement.

Defendants answered the petition with a general denial of all fraudulent averments charged and, in addition, alleged that if the allegations of the petition were intended to allege that Short was acting as the agent, servant and employee of Gross and in the scope of his employment and in furtherance of Gross's business, then that they specifically denied all such allegations and allege the fact to be that Short at all times was acting as the agent and attorney for Michael, in the scope of his employment as such, and in furtherance of Michael's business.

The answer contains other allegations as well as a cross-petition by Gross, not involved in this appeal, all of which may be ignored for purposes of appellate review and will not be hereinafter referred to.

Plaintiff's response to the defendants' answer was in the form of a general denial.

With issues joined as heretofore related the parties waived a jury trial. The cause then came on for trial by the court which, after patiently listening to what appears to have been lengthy and confusing evidence, found that Michael's evidence was insufficient to establish the allegations of his petition and that the demurrer should be sustained. Thereupon, after announcing its findings, to

which we shall presently refer, the court issued an order sustaining the demurrer and, upon being notified Michael intended to appeal from that ruling, continued other matters pending in the cause until after appellate review of its ruling on the demurrer.

Subsequently Michael perfected the instant appeal wherein, as we have previously indicated, the sole issue subject to appellate review is limited to the propriety of the trial court's action in sustaining the defendants' demurrer to the plaintiff's evidence.

In approaching consideration of the sole issue involved on appeal we believe readers of this opinion will have a better understanding of the factual picture presented by the record, as well as the reasoning of the trial court in reaching its decision as to the sufficiency of the evidence, if we quote *in toto* its findings and rulings as they appear in the record. They read:

"THE COURT: Well, I have heard all of the witness for the plaintiff, and examined the documents that have been offered. Looking first at the mental capacity of the plaintiff, it is apparent to the Court that he is mentally alert. Certainly at the time he testified. He remembers not only things in the far distant past but he remembers things in the immediate past. He is fully oriented, and knows what he is doing at the present time. It is apparent to the Court that from the testimony of the doctor, for example, that the plaintiff has changed his mind from time to time. But that certainly is no indicia of insanity. He has a perfect right to change his mind and do what he wishes with his properties. I don't think there is any real showing of a lack of mental capacity. The doctor who administered the care to this man while he was in the hospital would certainly be in the best position to know what drugs were given him and whether or not they would affect his mentality. His testimony was positive on that score, that they would not. As far as the evidence with regard to Mr. Short's representation of Mr. Gross, the Court is familiar with the actions that have been filed in this court. The Lee case is an old case, having nothing to do with this matter, involving sale of a tract of land here in town, a realtor's commission. The Bahney case, I believe, is a quiet title. Those were the only two that were filed at any time prior to the time this real estate contract was entered into. The Bahney case had been determined previously. The Lee case, it is true, is yet a pending case. But it has nothing whatsoever to do with this matter here. The question then simply is, if an attorney is representing a client in a matter of collection of a realtor's commission, can he properly draw for someone else an agreement to sell land to the person whom he is representing. Certainly, I see nothing that would prevent him from drawing such an agreement. There is no showing that he took any action whatsoever for Mr. Gross in reference to this land other than transmitting the offers that apparently came to him through the plaintiff (sic) (*defendant*). With regard to Mr. Murphy's testimony, I believe the testimony was that Mr. Gross and Mr. Short went out to Mr. Murphy's a few days before this contract was signed and that Mr.

Short talked privately with Mr. Murphy and said to him, and asked him, if he would give up his occupation of the farm under his lease, and Mr. Murphy said he would in effect, and asked if there would be any change of renting it from Mr. Gross, and Mr. Short, who had drawn the agreement under which Murphy was then occupying it, said he would have to pay more rent. Actually, when you look at the figures, Mr. Murphy is renting the property at roughly 50 cents a year above taxes. That statement in itself certainly would not necessarily indicate any representation of Mr. Gross, but would indicate that the attorney thought the rent was not sufficient, which is not too unusual of a determination under those facts, and Mr. Short having drawn the Murphy lease, I assume, was familiar with it. The rent under the agreement with Mr. Murphy, of course, is very low. So, I don't think that the representation of both parties has been shown at all. I don't think there has been a prima facie case made in that regard. After the agreement was drawn, apparently a controversy developed between Mr. Gross and the plaintiff's son. Mr. Short took action on behalf of Mr. Gross at that time and has in other matters in connection herewith until apparently there was a breach between the plaintiff and Mr. Gross and at that time, sometime in December, Mr. Short said he wouldn't represent either of them any further in the matter, and certainly he should withdraw when it becomes obvious that the interest of the parties are conflicting. But prior to that time there has been nothing other than the meeting of the minds of the parties in this agreement. The plaintiff, when in the hospital, indicated to the witness, Murphy, and others, that he was going to sell the land. He sold the equipment of, I believe, a horse and various equipment that is listed in the Exhibits to Mr. Murphy. There is no question about that agreement; no question about his mental capacity at that time; his knowledge of what he was doing. He turned down an offer of $30,000.00 for the property from someone other than the parties to this. I believe some folks from Missouri. He turned down the original offer of $30,000.00 from Mr. Gross, the offer of $32,000.00 and he was holding out for $40,000.00, but signed the contract agreeing to take $35,000.00. Certainly that does not indicate to me that the man was incompetent. With regard to the value of the property, while there is some evidence that this might be worth $70.00 or $80.00, I believe the highest figure given is in that neighborhood. It is also indicated by the evidence that other land in the vicinity has sold recently at prices similar to the $60.00 here. And the fact that the purchaser here offered one quarter section to Mr. Murphy, for the same price which he paid for it would indicate to the Court that apparently the purchaser here didn't feel that he had any great bargain with regard to that tract. He did offer, I believe, the evidence is that he has made a contract to sell another part of the land, 65 acres for more than he paid for it. But there he is selling a small tract by itself. And it was testified to by the gentlemen who had formerly been with the soil conservation that that was one of the choice tracts in this acreage. The Court feels that the plaintiff has not made out a sufficient case. The Court feels that the plaintiff knew what he was doing at the time. He knew the values. I don't see that anything would be gained by hearing the defendants' evidence in this regard. But taking the plaintiff's evidence, that

which is most favorable to him, I feel that the plaintiff has not made a prima facie case. I will sustain a demurrer at this time."

After a careful and extended examination of a confusing and incomprehensive record, due to the manner in which the case was presented in the district court as well as the manner and form in which it was presented on appellate review, which has made a decision of all questions raised by the parties extremely tedious and difficult, we are inclined to the view the trial court's ruling sustaining the demurrer to the evidence was based, and properly so, on grounds Michael had wholly failed, by the evidence admitted during the trial, to establish any of the alleged fraudulent acts set forth and relied on by him in his petition as grounds for setting aside the contract.

Under the confronting facts, conditions and circumstances it would serve no useful purpose, and of a certainty add nothing to the body of our law, to here detail the evidence before the trial court at the time of its ruling. It suffices to say, that when the admitted evidence upon which that tribunal based its decision is examined in the light of the same confusing and incomprehensive record to which we have previously referred, and is given all benefits of the established rule of liberal construction to which it is entitled under our decisions (*In re Estate of Hayden,* 174 Kan. 140, 142, 254 P. 2d 813), we are convinced there is nothing in such evidence, or in contentions advanced by appellant respecting its sufficiency, which makes it affirmatively appear the trial court's order sustaining appellees' demurrer to appellant's evidence was erroneous. In any event, in the face of the record presented, we are constrained to hold appellant has failed to establish any plain, palpable error warranting a reversal of that ruling.

The judgment is affirmed.